## Curry *v.* Luzerne Borough, Appellant.

*Negligence—Boroughs—Roads—Absence of guard rail—Allegata and probata.*

Where a statement in trespass against a borough for personal injuries avers that the accident was due to the absence of a guard rail at a narrow and crooked point in a road, where there was a steep embankment over which plaintiff's horse fell, the court cannot be convicted of error in permitting the plaintiff to show that at the point in question his horse became frightened by steam escaping from a boiler, standing near the highway, although this was not set out in the statement.

It is not necessary for borough authorities or supervisors to examine the highways and determine what is likely to frighten horses, as well as where they are likely to be frightened. But it is necessary for such officers to provide at all points a reasonably safe highway even when a horse is frightened.

If injuries are the result of a narrow, crooked embankment along a road which should have been guarded by a rail, and no guard rail is provided along its top, then the want of it is the proximate cause of the injuries.

Argued Jan. 13, 1904. Appeal, No. 11, Jan. T., 1904, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1894, No. 814, on verdict for plaintiff in case of John J. Curry v.

Luzerne Borough.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.  Affirmed.

Trespass for personal injuries.  Before HALSEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $2,441.65, upon which judgment was entered for $1,500.  Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions.

*D. O. Coughlin,* for appellant, cited: Simpson v. Irvin, 5 Pa. Superior Ct. 471; Gurley v. Missouri Pacific Ry. Co., 93 Mo. 445 (6 S. W. Repr. 218); Price v. St. Louis, etc., Ry. Co., 72 Mo. 414.

*James L. Lenahan,* with him *M. H. McAniff,* for appellee, cited: Sturgis v. Kountz, 165 Pa. 358; Webster v. Coal & Coke Co., 201 Pa. 278; Hoehle v. Allegheny Heating Co., 5 Pa. Superior Ct. 21.

OPINION BY MORRISON, J., March 14, 1904:

This action of trespass was begun in August, 1894, but it was not tried until May, 1902, and resulted in a verdict in favor of the plaintiff for $2,441.65.  This amount was reduced on suggestion of the court, by the plaintiff to $1,500, and thereupon judgment was entered on the verdict.  The record shows a declaration filed on January 1, 1902, and another declaration filed on February 3, 1902.  These declarations are substantially alike and it does not appear why the second one was filed.  But inasmuch as they are alike, we do not see that the number of them is of any consequence.

The declarations state the venue, and that the defendant is a municipal corporation, and avers its duty to maintain its public highways in a reasonably safe condition for travel, and describes the condition of the highway at the point of the accident which gave rise to this suit.  All of this properly lays ground for the statement of the real cause of action, which is done in the third paragraph of the declaration as follows: "And the said John J. Curry was in his wagon, to which was

attached a single horse, driving along the highway aforesaid, when his horse by reason of the abruptness of the curve in the road, and the narrowness of the roadway aforesaid, and the steep, unprotected embankment nearby, was thrown from his conveyance and severely injured, thereby damaging the conveyance and injuring his horse, and also thereby the plaintiff was thrown from his said conveyance with great force and violence, by which he was severely injured," etc. Then the character of the plaintiff's injuries is described and the expenses he was put to and his doctor bills, etc., are stated and he claims damages in the sum of $5,000. The portion of the declarations above quoted is rather peculiar. On reading it in the paper-book of appellant we supposed the printers had made a mistake, but sending for the original papers and examining them, we find that both declarations contain the above language precisely as we have quoted it. Taking this language strictly as it reads it would appear that the horse and the man were both in the conveyance and were both thrown out and injured, but of course this is not what is meant, and we will assume that the horse was where he ought to have been, hitched to the conveyance, and the man riding therein and driving the horse.

The learned counsel for the appellant has used about eight pages of his paper-book in printing his assignments of error, and the manner of printing them is not to be commended. They are not numbered and printed in accordance with our rules of practice, and it is difficult to understand them. But we understand the burden of the complaint of the appellant is that the allegata and the probata do not agree, because the court below allowed the plaintiff to prove that the accident was caused by the fright of the horse at steam escaping from a boiler, standing near the highway, and this was not set out in the declaration.

We think the learned counsel entirely misapprehends the cause of action contained in the declarations. The plaintiff is not complaining because the borough authorities permitted the steam engine to be operated near the highway. If he did so complain he would be stating a bad cause of action, because the borough authorities had no power to compel the owner of the engine and boiler to remove it so far from the highway that

it would not frighten horses. " The duty to keep the highway clear of impediments to travel thereon, does not include the power to enter upon the land of an abutting owner, and to destroy, remove or prevent the use of structures he has erected there for the prosecution of a legitimate business : " Haines v. Barclay Township, 181 Pa. 521 (see page 523). The real cause of action stated was the narrow and crooked road and the steep embankment on one side of the beaten track, where the fall was about three feet in a distance of six feet, and the want of a guard rail placed at or near the top of this embankment for the protection of the traveler in case his horse became frightened and shied.

The counsel seemed to have understood this declaration to state a cause of action, and what it was, because he entered the plea of not guilty and went to trial on the merits. If the declaration was not sufficiently definite to give him fair notice so that he could prepare for trial he ought to have asked for a bill of particulars. In our opinion it was entirely proper for the plaintiff, without alleging it in his declaration, to prove as explanatory of the accident, that his horse became frightened and what frightened it and all that took place immediately thereafter. It is a novel proposition, upon the trial of a case like this where the burden of the complaint is the narrow, crooked and unprotected highway along a steep embankment, that the plaintiff may not prove that his horse became frightened and shied over this embankment, without alleging in his declaration what frightened the horse. The most important complaint found in the declaration is the want of a guard rail, along the embankment at the side of this narrow and crooked track, where the accident is said to have happened.

.The learned counsel for the defendant seems to have appreciated the importance of the guard rail along this embankment at the trial, and he endeavored to prove that such guard had been provided, and he argues to the same effect in this court. But the difficulty about this is the evidence, as we understand it, justified the jury in finding that the fence was at the foot of the embankment six or more feet from where the descent began. Just why the jury was expected to find that ·this was a protection to the traveler at this point we are at a loss to understand. We think the evidence is practically un-

disputed, that the fence was at the foot of the embankment instead of being at the top of it as it ought to have been to furnish the requisite protection. It is a new and novel proposition that the guard rail may be put at the foot of the embankment or precipice instead of at the top thereof along the edge of the highway. Certainly common sense would dictate that the fence should be at the top of the precipice. It would hardly be much satisfaction to a traveler, if his horse shied and threw him and his carriage over an embankment, to find a strong guard rail or fence constructed at the foot of the descent, against which he could fall. It would seem to us to be good strong common sense for him to complain in such a case that the guard rail or fence had not been placed where it ought to have been.

In our opinion this case was well tried, and the learned court submitted the questions in issue to the jury in a charge which is free from substantial error, and the defendant has no just cause of complaint, unless it be that the plaintiff waited about ten years before trying his case, which made it difficult to show the exact condition of things at the point of the accident at the time it happened. But the defendant could have compelled the trial of this case earlier if it saw fit, and in any event, these were considerations for the court below and the jury, and we have nothing to do with them.

From the oral argument we got the impression that the learned counsel for the defendant considers it necessary for the borough authorities or supervisors to examine their highways and determine what is likely to frighten horses as well as where they are likely to be frightened. We do not think any such rule of law has been established in Pennsylvania. It is a matter of common knowledge that kind and roadworthy horses will at times frighten and shy and no human being can foresee what will or may frighten a horse. Some horses will be terrified at the sudden flight of a bird or the quick movement of a rabbit or pig, others will frighten at an automobile or a steam thresher, and indeed there is no accounting for the fright of a horse. Many times a horse will become frightened and terrified and no human being can understand what caused it. We understand the law to require the road officers to examine their highways and construct them of reasonable width and free of ob-

structions and protect the embankments along them, so that a traveler who is, with due care, driving a roadworthy horse may not be exposed to unnecessary danger in case his horse becomes frightened and suddenly shys out of the beaten track. In Township of Jackson v. Wagner, 127 Pa. 184, the Supreme Court said: " The duty of road officers is to provide for the ordinary needs of travel, but this changes with a change of circumstances. Proximity to a precipice or railroad track is a visible danger and requires a degree of care in guarding against it not necessary under ordinary circumstances, yet it is only that care which common prudence would dictate in view of an unusual danger as necessary to safety in the ordinary use of the highway at that point." In Herr et ux. v. City of Lebanon, 149 Pa. 222, the Supreme Court said: " If, therefore, in the ordinary use of the street one had been crowded over the bank by the volume of travel, by the sudden shying of his horse, or by reason of an accumulation of ice upon the roadway, the absence of the barrier might justify recovery if the plaintiff was not guilty of contributory negligence, and so in part the author of his own misfortune. Such accidents may be said to be a probable result of the neglect complained of. If so, the city was bound to anticipate and provide against them, and its failure to do so was negligence."

If the plaintiff's injuries in this case were the result of a narrow, crooked highway along an embankment, which should have been protected by a guard rail, and no guard rail was provided, then the want of it was the proximate cause of the plaintiff's damage: Boone v. Township of East Norwegian, 192 Pa. 206.

The books are full of cases to the effect that a steep embankment or declivity, near the edge of a highway over which a frightened and shying horse may go, must be protected by a guard rail or fence, and the absence of such protection is evidence of neglect on the part of the road officers.

In our opinion, the plaintiff, by competent evidence, presented a case which was for the jury ; that there was sufficient evidence from which they could find that the plaintiff was carefully driving a roadworthy horse along this highway at a reasonable speed ; that the horse became frightened from a noise made by a steam engine or boiler, near the highway, and

shied over this embankment, thereby throwing the plaintiff out of his carriage and injuring him, and that he was not guilty of contributory negligence.  These facts having been found by the jury, under the declarations in this case, made a good cause of action against the defendant and entitled the plaintiff to recover reasonable damages.

The evidence in this case does not convict the borough authorities of neglect in permitting the steam boiler and engine to be operated near this highway.  But we think if the road was narrow and crooked at this point, and the embankment was as alleged by the plaintiff, it became the duty of the borough authorities to take notice of the fact that the danger at this point was probably increased by the permanent operation of a steam engine there ; in other words it was an object which seems to have been of a permanent character, and, as is well known, would be likely to frighten horses.  Therefore, the duty of the borough authorities was more imperative to straighten and widen the highway at this point if practicable, and in any event they should have provided a sufficient guard rail along said embankment, if it was such an embankment as was dangerous in an unguarded condition.  But, in saying this we are not to be understood as laying down the rule that road officers must pass along their highways and endeavor to determine where horses will become frightened and what will be likely to frighten them at a given place.  There is no such general rule as this.  But on the contrary the road officers must take notice that the best of horses are liable to frighten and shy, and, therefore, they must construct their highways and protect them so that they will be reasonably safe for a careful driver when his horse is frightened.  The important thing is that all horses are liable to become frightened and to go out of the road at times, and the problem for the supervisors is to inspect their highways and so construct them as to protect the traveler from unnecessary danger when his horse is frightened. It may, as a general rule, be stated that no man can foresee at what point or place, or at what object a horse may become frightened.  It can also, with great positiveness, be said that persons having charge of such highways can, by reasonable care, determine what is necessary to be done to render such highways, at all points, reasonably safe for careful drivers, with

roadworthy horses. It would be a hard rule for townships and boroughs to require their officials to guard against horses becoming frightened. They cannot be expected to go along their highways and search out and remove all obstacles and things which may frighten a horse. No such rule has ever been adopted in this state, nor do we presume it ever will be. We discover no error in this record which requires a reversal of the judgment. See Dixon v. Butler Twp., 4 Pa. Superior Ct. 333.

The assignments of error are all overruled and the judgment is affirmed.

RICE, P. J., and ORLADY, J., concur in the judgment.