# Sharon Borough *v.* Pennsylvania Company, Appellant.

*Road law—Street—Public street—Evidence.*

1. A finding that a street was in fact a public street is sufficiently sustained by evidence which shows that it had so appeared on all the official maps and plans of the borough in which it was situated from the earliest times; that it was so designated in conveyances by property holders along its line; that it had been used continuously for fifty years as a street, and that public water plugs or fire hydrants had been located within its lines.

*Road law—Street—Obstruction of street—Boroughs.*

2. Where a street in a borough has been dedicated and accepted as a public street, it cannot subsequently be obstructed either by the borough itself, or by anyone acting with the consent of the borough. It may be vacated by proper legal proceedings but it cannot be obstructed.

*Road law—Boroughs—Railroads—Crossing streets—Laches.*

3. Section 12 of the general railroad Act of February 19, 1849, P. L. 79, relating to the crossing of public highways by railroads, is not restricted to rural highways, but applies to public streets in boroughs and cities.

4. Where a railroad has constructed an embankment across a public street of a borough so as to obstruct the street, laches cannot be imputed either to the commonwealth, or to the officers of the borough in which the street is situated, in permitting the obstruction to continue for a long period of time.

Submitted May 9, 1910. Appeal, No. 138, April T., 1910, by defendant, from decree of C. P. Mercer Co.,

Jan. T., 1906, No. 3, on bill in equity in case of Sharon Borough v. Pennsylvania Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before WILLIAMS, P. J.

The opinion of the Superior Court states the facts.

The court entered the following decree:

And now, December 6, 1909, this cause came on to be further heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, it was ordered, adjudged and decreed as follows:

That the Pennsylvania Company shall, on or before February 1, 1910, submit plans and specifications to the plaintiff, the borough of Sharon, for the construction of a suitable undergrade passageway under the tracks of the defendant company where said tracks cross Franklin street in the borough of Sharon; which plans and specifications shall provide for a passageway fifty feet in width with sufficient clearance to permit of a thirty-four foot passage for wagons and other vehicles, with an eight-foot sidewalk on either side; said passageway to be suitably roofed, banked and paved for such distance as the same shall be below the present level of Franklin street, with drainage provided from the lowest part of the roadway.

That upon approval by the borough of Sharon of plans and specifications as above decreed, the defendant company shall forthwith commence and pursue to completion as speedily as possible and in good and workmanlike manner, such undergrade crossings.

And it is further ordered that the defendant, the Pennsylvania Company, pay the costs, including the master's fee.

*Error assigned* was the decree of the court.

*S. R. Mason,* for appellant.—We submit, therefore, that the plaintiff is forever barred by its laches, from

maintaining a bill in equity, which is never of right, but solely of grace: Murray v. Playford, 192 Pa. 24; Kelly's Est., 37 Pa. Superior Ct. 320; Keeling v. Ry. Co., 205 Pa. 31; Hinnershitz v. Traction Co., 206 Pa. 91.

The case of Bradford v. New York & Pennsylvania Telephone & Telegraph Co., 206 Pa. 582, is so nearly on all fours with the case at bar, that we submit this case is governed by it. See also Maust v. Ry. Co., 219 Pa. 568; Juan F. Portundo Cigar Mfg. Co. v. Mfg. Co., 222 Pa. 116; Kelly's Est., 37 Pa. Superior Ct. 320; Good v. Queens Run Fire Brick Co., 224 Pa. 496.

The twelfth section of the general railroad law of 1849 has no application: Dubbs v. R. R. Co., 148 Pa. 66.

*Horace W. Davis* and *James A. McLaughry*, for appellee.—It is well settled that the statute of limitations runs not against the commonwealth: Com. v. McDonald, 16 S. & R. 390.

We believe that the case of the City of Pittsburg v. Epping-Carpenter Co., 194 Pa. 318, rules the present case.

A municipality holds the title of its streets in trust for the public: Callen v. Electric Light Co., 66 Ohio, 166.

Public rights cannot be destroyed by long continued encroachment: Com. v. Baldwin, 1 Watts, 54; Com. v. Alburger, 1 Whart. 469; Kopf v. Utter, 101 Pa. 27; Del., L. & W. R. R. Co. v. Buffalo, 158 N. Y. 266; Cleveland v. Augusta, 102 Ga. 233; Kittanning Academy v. Brown, 41 Pa. 269; Platt v. Platt, 58 N. Y. 646.

OPINION BY HEAD, J., November 21, 1910:

The bill filed by the plaintiff borough complains that the defendant company has so constructed its line across one of the public streets of the said borough as to totally obstruct and impede the public travel thereon. Against the relief prayed for the defendant interposes several distinct lines of defense.

1. It is first contended that Franklin street, referred to

in the bill, never was a public street of the said borough. The report of the referee to whom the case was first sent, in this respect adopted by the learned trial court, effectually disposes of this contention adversely to the defendant. Whilst it is true that the evidence discloses no formal ordinance of the borough laying out or opening this street, it is ample to support the conclusion reached by the referee and the court. It appears that from the earliest days of the existence of the borough this street has been continuously shown on all of its official maps and plans. It was widely, if not universally, recognized during a long period of years as a public street in the conveyances of property holders whose land abutted on its lines. It has been continuously used for a half century by the public, save in so far as that use was impeded by the obstruction complained of. Public water plugs or fire hydrants were located within its lines. All of this evidence was, in our judgment, entirely sufficient to sustain the conclusion reached, and the first line of defense was therefore unavailing.

2. It is further contended that the embankment complained of was at least authorized, if indeed it was not required, by certain ordinances of the borough offered in evidence. The learned trial court, after a careful examination of all of them, points out that in no one of them was Franklin street mentioned or referred to. He further finds that a compliance with the ordinances fixing the grade of the railroad at other streets mentioned therein would not necessarily result in the grade complained of at Franklin street, and there is testimony which, although controverted, would sustain this conclusion. And this apart from any application of the legal principle that when Franklin street became a public highway it was dedicated to the use, not merely of the citizens of the municipality, but of all of the people of the commonwealth, and as a consequence it would not be competent for the borough council to authorize its total obstruction. It is not denied, of course, that the legislature, representing all of

the people, has invested the municipal authorities with the right to vacate an existing public highway in the manner prescribed by law, but it is sufficient to say that no effort to bring about such vacation was ever made by the defendant company and no steps to accomplish it were ever taken by the borough authorities. We are therefore of opinion that in this respect the conclusion reached by the learned court was right.

3. The proposition most seriously pressed upon us by the able counsel for the defendant is, that whatever rights the borough might have had at an earlier date to complain of this obstruction have been lost by the laches of its officers in filing this bill.

The charter powers of the defendant company are those conferred on like companies by the general Act of February 19, 1849, P. L. 79. In sec. 12 of that act the legislature carefully qualified the general right given to companies organized under it to construct their lines across public highways. It provides, "That whenever in the construction of such road (railroad) it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of the said company to so construct the said road (railroad) across such established road or way as not to impede the passage or transportation of persons or property along the same."

Giving to this section the meaning its language plainly and naturally imports, it would seem clear enough that any railroad whose charter rights were conferred by this act would be acting beyond its granted powers and would be doing an unlawful and forbidden thing in attempting to so carry its line across a public highway as to totally obstruct the travel thereon. The able counsel for the appellant seeks to escape this conclusion by arguing that the provision of the act quoted was intended to apply only to rural highways. We are unable to agree with him in his contention that the case of Dubbs v. Philadelphia & Reading Railroad Co., 148 Pa. 66, furnishes authority to support his argument. It is true that in that case the

Supreme Court used the following language: "The plain object of the act of February 19, 1849, was to compel railroad companies to give the owners of farms a convenient mode of access from one part to the other when divided by a railroad," etc. It is to be remembered that in that case the court was dealing only with a rural highway and was construing the act with reference to the obligations of a railroad company in dealing with such a highway. To draw from this language the conclusion that it was therein determined that there was no such limitation upon a railroad company crossing a public street in a borough or city is, we think, a wholly unwarranted inference. It would be anomalous to suppose that the legislature was so careful to conserve the rights of the public in the highways of the state only where the population was sparse and the travel light, and at the same time to assume that it gave to railroad companies the unqualified right to obstruct other public highways where the population was dense and the public necessity for a highway was increasingly urgent and imperative. We conclude therefore that the act of the present defendant in so constructing its line across Franklin street in the plaintiff borough was an act outside of its charter rights.

As we have already seen, when Franklin street became a public street of the plaintiff borough, it was dedicated to the public use of the citizens of the commonwealth. The obstruction of such a street is a public nuisance. Had the defendant been indicted for maintaining such a nuisance, it is not easy to see how it could have successfully pleaded the fact that it had maintained such nuisance for a long period of years as a good foundation for its right to continue to maintain it indefinitely. It is a principle of law as old as the maxim, nullum tempus occurrit regi, that a public right, when established and in full being, cannot be lost by mere lapse of time.

In Commonwealth v. Erie & North-East Railroad Company, 27 Pa. 339, a case in many respects resembling the one before us, Mr. Chief Justice BLACK used the following

language: "It cannot be that the defendants were misled by the people or their officers, for they must have known that a city ordinance could not authorize what an act of the legislature forbade. No laches can legally be imputed to the commonwealth, and in point of fact, she has been guilty of no unfairness. She spoke her will plainly in the act of incorporation, and gave it to the defendants to be a guide to their feet and a lamp to their path. They disregard it. The attorney general proves the fact, and stands up for judgment. We cannot refuse what law and equity demand."

In City of Pittsburg v. Epping-Carpenter Company, 194 Pa. 318, the Supreme Court quoted and approved the following language of the learned trial judge: "In Pennsylvania a highway is the property of the people, not of a particular district, but of the whole state. . . . When the public right has been acquired, it cannot be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance." The same principle is strongly stated by Mr. Justice GORDON in Kopf v. Utter, 101 Pa. 27, and is reiterated in a long line of cases familiar to the profession.

We are not to be understood as holding that, in a proceeding in equity, laches may not be imputed even to the commonwealth under certain circumstances; but that the cases where the commonwealth or its representatives should be denied relief on this ground are rare, is sufficiently indicated in the following quotation from the opinion of Mr. Justice BROWN in Bradford v. Tel. & Teleg. Co., 206 Pa. 582: "While the authorities with us are not numerous in holding that laches may be imputed to the commonwealth and municipalities in denying them equitable relief which might otherwise be granted, the rule that it can be imputed to the public is clearly laid down in several cases," etc. An examination of the cases relied on by the appellant to support its conclusion that the present

plaintiff should be denied relief will show that they are clearly distinguishable from the case before us, and the one last cited is well adapted to illustrate the distinction. In that case the erection of the poles and wires of the defendant company in the streets of the plaintiff borough was an act fully authorized by its charter. The legislature had conferred upon the municipality the express right to give its assent to such construction, and when that assent had been given and the company, on the faith of it, had invested large sums of money in the construction of its lines, its right to the possession and enjoyment of its property was as thoroughly and securely protected by the laws as the right of any private citizen to possess and enjoy the property he had bought and paid for. Moreover, had the claim of the borough in that case been sustained, it would have resulted in the absolute destruction of the defendant's physical property, in greatly impairing, if not extinguishing the franchises conferred upon it by legislative grant, or, in a word, it would have been a confiscatory act, and this would have happened in the face of the fact that by repeated acts of the most significant character the municipality had assented to the construction of the defendant's line, had derived benefit from it by taxation and otherwise, as pointed out by the court, and in doing so had but exercised a power expressly conferred upon it by the legislature.

In the present case the most that the defendant can urge is that municipal authority was given to it to build its line across Franklin street. In the light of its own charter it had no right to construe such a grant as conferring upon it the right to close and totally obstruct a public street of the borough.

But there is an additional reason why the present plaintiff should not be denied the relief prayed for merely on account of lapse of time. It is clear from the testimony that when the railroad was originally constructed it carried its tracks across Franklin street on an embankment. As to the height of this embankment, as originally con-

structed, the testimony is in some conflict. The defendant itself, by its own engineer and chief witness, who had before him what he declared to be the original drafts and plans of construction, testified that the embankment from the very outstart was nine feet above the level of the street. At the present time it is but ten feet. The decree of the court below requiring the defendant to carry the street under its right of way but compels it to do now what it should have done originally. It is not apparent that the expense of so doing will be proportionately greater now than it would have been then. Much less does it appear that the execution of this decree will destroy any property of the defendant, will in any way interfere with the use and enjoyment of its franchises, or that it could by any stretch of the imagination be declared to be confiscatory in its nature.

Without attempting to follow the learned trial court through every phase of the lengthy and able opinion with which he supports his conclusion, we think we have sufficiently indicated the reasons why his decree should stand.

Decree affirmed.