## Sturges' Appeal.

*Municipal law—Street improvements—Assessment of benefits—Defenses—Nonuse of street by public—Act of May 9, 1889, P. L. 173—Dedication—Estoppel.*

1. The Act of May 9, 1889, P. L. 173, refers only to "unused" streets, and either technical opening or the fact of public use is enough to take a street out of the operation of the act.

2. Where the cost of opening and improving a street for public use has been imposed upon an abutting property owner and he defends on the ground that the street, although formerly dedicated as a public highway, had not been opened or used by the public for twenty-one years, and that under the Act of May 9, 1889, P. L. 173, it could not be lawfully opened or improved without the consent of the abutting property owners, he cannot defeat liability where it appears that the street had been used within twenty-one years as a public highway, although somewhat irregularly.

3. Where in such case it appears that the title of the abutting owner had been derived from the original owner of a large tract, and subject to a plan made by such owner, showing the lots in

question located upon a public street, and after such purchase the defendant had acknowledged and ratified the use of the street by erecting a fence along the line thereof, and in other ways, he cannot subsequently defend against an assessment for the cost of a street improvement on the ground that the street could not legally be opened or improved without his consent.

Argued February 24, 1913. Appeal, No. 197, Jan. T., 1912, by E. B. Sturges, from order of C. P. Lackawanna Co., May T., 1911, No. 378, dismissing exception to report of jury of view In re Paving, Grading and Curbing of Walnut Street from Washington Avenue to Capouse Avenue. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from order dismissing exception to report of jury of view.

NEWCOMB, J., filed the following opinion:

In pursuance of an ordinance providing for the paving, grading, etc., of a part of Walnut street, viewers were appointed at the city's instance to ascertain the damages and assess the cost of the improvement, which covers the three blocks extending easterly from Capouse to Washington avenue. No damages were found by the viewers and the cost was in large part assessed on the abutting property as benefits. One of the abutting owners is Mr. Sturges, who excepts on the ground that "the records do not disclose that Walnut street was ever dedicated to or accepted and legally occupied by the city."

As the case is submitted, however, the dedication in itself is not questioned. The point relied upon is that the dedication had expired by limitation for non-user under the Act of May 9, 1889, P. L. 173.

The street is located on each of two tracts. The former owners were the Lackawanna Iron & Coal Co. and the Dolph Estate, respectively. They adjoined by a line running somewhat obliquely through the two squares situate on either side of Walnut, next westerly from Washington avenue, now owned by the exceptant.

According to the respective plots and the deeds under which he holds, his boundaries are the building lines on either side of the street. The dedication in case of the Iron & Coal Company was as early as 1857. The assessment is contested on the ground that after the lapse of twenty-one years from that date without any act of the city to open and improve the street for public use, it cannot now be so used without his consent or formal proceedings to appropriate it and pay the damages as for private property.

Depositions are submitted, and though somewhat indefinite in character, yet, coupled with the arguments of counsel it is believed they warrant the following

### CONCLUSIONS OF FACT:

1. The street is in a territory which remained until late years unenclosed, irregularly improved, and accordingly open as a quasi common, being so used indiscriminately for such travel as had occasion to go in that neighborhood, without reference to street lines.

2. In course of time, at points about the westerly limit of the proposed improvement, mills and manufacturing plants were established; at intervening points between these and Washington avenue, other improvements have been built; but all conforming to the building line called for in the various deeds; and, thus, as the travel increased it assumed a more definite route along the course of the streets as plotted.

3. This has been more noticeable, as it has been favored within the last twenty years by reason of the filling up of low places, and the grading down of a hill or knoll in another, which was done either by the Iron & Coal Company or its successor in ownership of the abutting lands.

4. While the city has heretofore taken no corporate action in the premises nor done any work to open or improve the street, yet it has from time to time paved and curbed the intersecting avenues; and at the line of

Walnut street in each instance a corresponding breach has been left in the curb, where the circular form of curb was used as at all other street corners.

5. Within the last ten years the owners on either side throughout the three blocks covered by the proposed improvement, including the exceptant, have fences along the building line called for in their deeds; in that way the street lines have apparently become defined on the ground at a distance of sixty feet apart as shown in the maps or plots hereinafter mentioned; and the traffic, which is now by no means small, has conformed thereto.

6. The ordinance in question was passed in 1910. Exceptant's titles were acquired by several deeds between 1893 and 1899.

7. Part of his land is square 309, lying next to Washington avenue and on the southerly side of Walnut street. This was low and swampy. Twelve to fifteen years ago he caused it to be filled up by depositing waste from a coal washery which he operated in the vicinity. Possibly as incidental to that, the street area was to some extent included in the grading, although that is not entirely clear. But if it be so taken for granted, that is the only private use he ever made of it. He never enclosed it, nor by word or act indicated an intention to assert any claim of title, use or possession adverse to the city or the traveling public. On the contrary, as already noted, for some years past he has maintained fences on either side so as to exclude it from his apparent use and occupation.

8. The street has never been closed nor does it appear that any attempt was ever made to interfere with its use by the public, or to give notice to any one that it was anything other than a public highway, though unimproved; except that at a point in the third block to the west of the avenue where some tracks of the D. & H. R. R. cross, there was at one time a notice, "No Thorougfare." But when that was or how it came to be

there does not appear. Neither does it distinctly appear that it has any reference to this street.

9. It was by counsel agreed at bar that the conveyance under which title to the bulk of its streets is claimed by the city, should be considered in evidence. That is a bipartite deed between the Lackawanna Iron & Coal Company and the Borough of Scranton dated March 7, 1857. Though it doesn't appear whether the deed was ever recorded, it is a matter of familiar local history and is a fact generally well known. It is not disputed that at all times with which the case is concerned, exceptant had notice of the city's rights under the deed.

It was made in pursuance of formal proposal by the company and equally formal acceptance by the borough, all of which is therein recited.

For present purposes it is enough to say that, referring to its town plot of Scranton, of which a copy was attached and made part of the deed, the company granted to the borough, its successors and assigns, "All the avenues, streets, lanes and alleys in said plot laid down and represented and all control and power over the same," in accordance with the proposal recited "for the use of the public as highways," but "without conveying the soil or fee simple in the land covered by said highways," etc....... "To have and to hold the same to the said the Borough of Scranton, her successors and assigns, for the purposes aforesaid so long as the same may be used lawfully as public highways," etc.

On its part the borough adopted and ratified the town plot and covenanted that, so far as not formally opened, the streets, etc., "shall and will be opened and graded according to said plan and in conformity to the courses, distances, extent and width of said avenues, streets, and alleys as laid down upon said plan," etc.

10. It is not disputed that Walnut is one of the streets shown on the plan at a width of sixty feet between building lines; nor that the city is successor in title to the

rights thus conveyed to the borough and subject to its covenants in the premises.

11. But the company's line, as noted at the outset, crossed the street at about ninety-four feet west of Washington avenue. To that extent the portion of the street now in question is on the Dolph tract. When that was plotted, however, the plan was made to conform to the town plot and thus Walnut was carried easterly on the same alignment to the city limits. It isn't claimed there was any conveyance of the streets by the owners of the Dolph. Thus the status of the ninety-four feet rests on the effect of the sale of lots according to the plan. When this tract was so. laid out in town lots doesn't definitely appear, although it is agreed by counsel to have been before 1877. It is not disputed that the plan was long since adopted by the city and that its maps conform to it.

On these facts it is not apparent how the case can be within the purpose and intent of the Act of 1889.

The learned counsel says very candidly that the existence of a sixty-foot street, as shown by the plans, referred to in the deeds, and defined on the ground by corresponding fences, is not denied. But he earnestly contends that it must now be regarded as a merely private way which exceptant has a right to maintain for the benefit of his several properties, and is, perhaps, bound to leave open for the benefit of other parcels to the westerly, held under titles similar to his own.

This view is believed to be more plausible than sound, and not supported by the cases to which he refers where the act has been considered.

. It cannot escape notice 'that in its most prominent features it presents a case clearly distinguishable from those relied upon, and that we are asked to go much farther than the court went in either of those instances.

In Quicksall v. Philadelphia, 177 Pa. 301, the date of dedication was 1847. No proceedings to open were had till 1893. In the meantime the streets were not open in

point of fact; but to the contrary thereof had remained continuously in the exclusive possession and use of the abutting owner. They formed the site of an active stone quarry. They were not traveled over by others; no use or occupation was ever had by any one other than the owner. The proceedings to open involved an apparent attempt to exclude him from the use and possession of private property.

In Woodward v. Pittsburgh, 194 Pa. 193, precisely the same question was presented. Plaintiff's title went to the middle of a street as plotted in 1870. Sometime after 1880 she fenced to that line, and as so enclosed she was in the actual and exclusive use and occupation of the property until 1896, when the city opened the street for public use. It was held that the statute applied.

The same is true of Washington Female Seminary v. Washington Boro., 18 Pa. Superior Ct. 555.

Under its authority to establish curb lines the borough attempted to relocate its streets to conform to an ancient map. The streets had been fully defined on the ground for some generations; titles had long been held and property improved accordingly; inter alia the result would have been to take for street purposes property of which plaintiff and its predecessors in title had been in the exclusive possession for many years; and thus necessitate the reconstruction of its buildings.

No such case is presented here. The Act of 1889 refers to "unused streets." Either technical opening, or the fact of public user, would seem to be enough to take a street out of the operation of the act. As between private and public use in this instance, such use as was at any time made was that of the traveling public. True, at an early day that was vague and ambiguous in character. Not being confined to the street limits its course would appear to have been irregular, as determined by the line of least resistance and the traveler's destination. But all the time the circumstance is present that no private use or claim of right on part of the

abutting owner intervened. Just how far back such travel began cannot be determined. Neither can it be determined at what time the adjacent improvements began to have the effect of directing the traffic along the allotted course of the street. It cannot, therefore, be ascertained under the evidence whether that began within the twenty-one years next after 1857.

What effect is to be given to the terms of dedication and acceptance as between the iron company and the city, coupled with the latter's express covenant to open the street, need not now be considered. It is sufficient to note the effect of the grant under which exceptant claims title. In every instance he purchased, not according to streets merely projected by the city, to which reference was made for the purposes of description only; but according to a plan made by the owner showing the lots to be on the street. As between the parties to such sales a covenant is implied that the street shall forever be open to the traveling public: Davis v. Sabita, 63 Pa. 90; Transue v. Sell, 105 Pa. 604; In re Pearl St., 111 Pa. 565; Quicksall v. Philadelphia, 177 Pa. 301; Osterheldt v. Philadelphia, 195 Pa. 355.

While, therefore, at common law the proprietor is in no position thereafter to revoke such dedication, and it operates prima facie as a relinquishment of all claims for damages for the use of the land within the street lines for street purposes, yet Quicksall v. Philadelphia, 177 Pa. 301, holds, as we understand it, that the statute limits the gratuitous servitude to twenty-one years unless within that time the rights of the public are exercised. But aside from the evidence of user here before exceptant purchased, and indeed before the act was passed, we have to deal with a situation wholly unlike any presented in the cases relied upon. If exceptant's theory be sound the bar of the statute had intervened before his first purchase; and he accordingly took each parcel discharged of the public easement. If so, he might have enclosed the street and excluded all other

persons. But what he did was quite the contrary. Everything he did implied a recognition of a public street and points only to the inference of an intent to maintain the dedication.

Under such circumstances it is believed that he cannot now be heard to assert the contrary, and that he has no standing to invoke the Act of 1889.

The exception is therefore dismissed and the report confirmed.

*Error assigned* was the action of the court in dismissing the exception and confirming report.

*S. B. Price,* with him *C. B. Price* and *J. H. Price,* for appellant.—When a person lays out his land in lots and sells lots in accordance with a plan, the streets are dedicated to the public and a grant of the street to each purchaser is implied. South Western State Normal School Case, 213 Pa. 244.

When twenty-one years have expired after the dedication and the street has not been accepted during that period, the land is relieved of the public servitude imposed: Beatty's Plan, Alley Vacation, 104 Pa. 622; Chester v. Thurlow Land Co., 13 Pa. D. R. 285; Washington Female Seminary v. Washington Boro., 18 Pa. Superior Ct. 555; Quicksall v. Philadelphia, 177 Pa. 301; Woodward v. Pittsburgh, 194 Pa. 193.

The fact that the dedication was by a deed to the city does not make the rule relative to unopened streets inapplicable: Hamilton v. Elliott, 5 S. & R. 375.

Subsequent conveyance bounding the land on the street, is not a re-dedication: Cotter v. Philadelphia, 194 Pa. 496; Carroll v. Asbury, 28 Pa. Superior Ct. 354; Beatty's Plan, Alley Vacation, 104 Pa. 622; Com. v. Moorehead, 118 Pa. 344; Downing v. Coatesville Boro., 214 Pa. 291; Scott v. Donora So. R. R. Co., 222 Pa. 634.

Grantees of the person who laid out the lots may recover damages if the streets are not accepted within

the limit of the statute: Woodward v. Pittsburgh, 194 Pa. 193; Chester v. Thurlow Land Co., 13 Pa. D. R. 285.

The dedication of the street having expired by limitation it became a private way: Beatty's Plan, Alley Vacation, 104 Pa. 622; Carroll v. Asbury, 28 Pa. Superior Ct. 354.

City authorities cannot pave or improve a private way: Beatty's Plan, Alley Vacation, 104 Pa. 622.

*David J. Davis,* City Solicitor, for appellee.—The street in question is a part of the original plot or plan of the town, and is as old as the town itself, and has been used by the public as occasion required for over fifty-five years. It was accepted by the city, and the fact that but little, if any, work was done on the street for many years after its dedication and acceptance had but little significance, especially when what work was done the owner of the abutting property did without any intention to assert claim of title to the land within the lines of the street: Commonwealth v. Moorehead, 118 Pa. 344.

The dedication of streets and alleys in laying out a plan for a town is a contract with the public, and the sale of lots according to the plan, which shows them to be on a street, implies a grant or conveyance to the purchaser that the street shall be forever open to the public, and operates as a dedication of it to the public use: Southwestern State Normal School, 26 Pa. Superior Ct. 99.

When an owner makes a plot on which spaces are left, indicating the dedication of streets not previously projected by the public authorities, and sells lots with reference to the plot, he cannot recall his dedication, but leaves the streets to be opened by the proper local authorities at such time as the public interest may require, and of this they are the judges: Higgins v. Sharon Boro., 5 Pa. Superior Ct. 92.

PER CURIAM, March 17, 1913:

The order appealed from is affirmed on the opinion of Judge NEWCOMB.