## Union Trust Company of Pittsburgh *v.* Schreck et al., Appellants.

Argued March 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*William B. Paul,* with him *E. R. Lawrence,* for appellants.

*Arthur W. Henderson,* with him *Fred C. Houston,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1939:

The Union Trust Company, Guardian of the Estate of Martha E. Upstill, a feeble-minded person, filed a bill of complaint to invalidate and set aside the conveyance and transfer by Mrs. Upstill of all her property, both real and personal, to her niece, Emma H. Schreck, and to Charles H. Schreck, her husband, the defendants.

The Chancellor found, inter alia, the following facts: Martha Upstill was the owner of real estate consisting of a two-story frame dwelling located at 330 Sheridan Avenue, Pittsburgh, and a double two-story frame dwelling in the rear, and that on August 16, 1935, she executed a deed conveying this real estate to defendants. Emma Schreck lived with her Aunt Martha Upstill for many years prior to her marriage, the relationship between them was almost that of mother and daughter, and after her marriage the relationship continued, with frequent visits to the Upstill home by Mrs. Schreck and her husband. At the time of signing the deed Mrs. Upstill was 73 years of age and had for many years prior to that date been the sole occupant of the house at 330 Sheridan Avenue. From May 20, 1935, to June 10, 1935, Mrs. Upstill was confined to the Allegheny General

Hospital, suffering from physical disability, particularly anemia, and the presence of advanced arteriosclerosis was noted. After release from this hospital she returned to her home. In June, 1935, she gave custody of her diamond ring to Mrs. Schreck and in July, 1935, Mrs. Upstill, having been tendered the return of the diamond ring, gave it to Mrs. Schreck. During the summer months of June, July and August, 1935, Mrs. Upstill first gave evidence of worrying about property matters, including the fancied loss of tenants and her inability to pay her debts. This condition became progressive until the middle of July a neighbor, Mrs. Bolinger, began to make daily visits to the Upstill home to look after and care for Mrs. Upstill. Mrs. Upstill had frequently indicated her desire that all of her property and belongings should eventually become the property of her niece, Mrs. Schreck. This was evidenced by repeated declarations and by a will in which Mrs. Schreck was named as beneficiary. At the time of the transfer of the aforementioned property, there was an equity in it of $6,500. All arrangements for the transfer were made by defendants who first secured the advice of an attorney, who prepared the deed, asked and made arrangements for the examination of Mrs. Upstill by Dr. S. J. Georgetson, who gave as his opinion that Mrs. Upstill was mentally competent and qualified to sign a deed, and arranged for the attendance of witnesses. This attorney, Mr. and Mrs. Schreck, Richard Schreck and Anna Zeilfelder met at the home of Mrs. Upstill for the purpose of having her sign the deed. There was a discussion for more than an hour, during which Mrs. Upstill repeatedly sought assurances that she would be taken care of and that the property would be protected and after the lapse of that time the parties left without the deed having been signed. As they were on the sidewalk Mrs. Upstill called them back and shortly thereafter signed the deed. Acknowledgment was taken the next day by the notary public in the office

of the attorney and the deed was recorded August 17, 1935. At the time of the signing of the deed, the furniture in the Upstill residence was likewise taken over by the Schrecks. On August 21st next Mrs. Schreck appeared at the office of the City Department of Welfare where she was interviewed by a Miss Wilson, now Mrs. Thomas Gallagher, for the purpose of having her Aunt Martha committed to the City Hospital at Mayview as a patient. The report of the interview indicates that Mrs. Schreck complained that Mrs. Upstill was "a woman living at above address alone—silly—quarrelsome—suspicious—dirty habits." Mrs. Schreck also gave Miss Wilson a tentative diagnosis of senile dementia and was informed that an examination had been made by Dr. Mitchell. No such examination by this doctor had been made at that time, nor had any diagnosis of senile dementia ever been given by him. On August 22, Mrs. Schreck applied for and received from Dr. C. W. Williams, City Physician, a note addressed to the Chief Clerk in the City Department of Public Welfare intended to assist Mrs. Schreck in getting her Aunt Martha into Mayview. At that time the doctor had not yet seen Mrs. Upstill and a diagnosis of senile dementia as specified in the note was made from information he received from Mrs. Schreck. August 23d is the date fixed by defendants and by Mrs. Bolinger, their witness, as the time when Mrs. Upstill exhibited the first symptoms of mental derangement. The following day Dr. Williams examined Mrs. Upstill at the request of Mrs. Schreck so that he could properly certify her condition for admission to the mental ward at Mayview. He found that she had delusions of persecution, that she threatened suicide, that she was disoriented as to time and it was his opinion that she was suffering from senile dementia. On August 26th, Mrs. Schreck signed an application for the admission of her aunt to Mayview, stating therein that her aunt "imagines the house is full of bootleggers, nails doors shut to keep

them out, eats her food and says she gets nothing to eat, turns on gas." The following day Mrs. Upstill was committed to that institution and at the time of trial was still a patient there. The defendants moved on August 29th to Mrs. Upstill's residence, taking possession of that house and the other properties conveyed to them by the deed of August 16th and have since exercised all rights and privileges of an owner, including the payment of taxes, mortgage interest and repairs and the collection of rents.

The Chancellor also found that although there was testimony indicating that Mrs. Upstill was competent at the time of signing the deed, he was satisfied that the weight of the testimony indicates that she was not so competent at the time of signing the deed and that "the weight of medical opinion in the case indicates that she was, as of August 16, 1935, suffering from advanced cerebro arteriosclerosis; that at the time of her admission to the City Home and Hospital at Mayview she was very definitely suffering from mental incompetence; that cerebro arteriosclerosis is a progressive disease resulting in the deterioration of the mental processes which had, by the date of her admission to the City Home and Hospital at Mayview on August 27th, so far advanced as to preclude the probability or possibility that on August 16, 1935, she could have been mentally competent, in view not only of the objective symptoms which could be ascertained August 27, 1935, but in the light of the history of past conduct given by witnesses upon the stand." The Chancellor amended his adjudication by adding thereto an additional finding to the effect that Mrs. Upstill "was mentally incompetent at the time of the alleged gift of the diamond ring" to Mrs. Schreck "and was in the making of the gift a victim of designing persons, to wit: her niece."

The Chancellor concluded as a matter of law that the deed conveying the aforementioned property being the act of one mentally incompetent, is void; that the

defendants must reconvey the property to the guardian of the Estate of Martha E. Upstill, a feeble-minded person; that the defendants must account for the rents and other profits received from August 16, 1935, to date, taking credit for proper expenditures made for taxes, mortgage interest, repairs and monies spent for the maintenance of Mrs. Upstill at the City Home and Hospital at Mayview; that Mrs. Upstill, being mentally incompetent at the time of signing the deed, the alleged transfer of household furnishing is also void; and that the period of mental incapacity having extended over a period of months prior to August 27, 1935, the alleged transfer gift of the ring from Mrs. Upstill to Mrs. Schreck, made during the period of such mental incapacity, is void.

Defendants filed exceptions to many of the findings of fact and to all of the conclusions of law. After argument before the court in banc, it adopted the adjudication and opinion of the chancellor, dismissed the exceptions and entered a final decree. This appeal followed.

The principles to be followed in the determination of this appeal are long established. These are: (1) Where a confidential relationship exists between the parties to an alleged gift, the burden is on the donee to prove affirmatively that the gift is unaffected by any taint of undue influence, imposition or deception. The gift must be the free and intelligent act of the donor: *McCown v. Fraser*, 327 Pa. 561. (2) The findings of a chancellor based on substantial testimony and affirmed by the court in banc have the effect of a verdict of a jury and cannot be reversed on appeal, in the absence of clear error: *Manheim v. Bd. of Co. Comm.*, 330 Pa. 92.

The chancellor, after giving painstaking attention to the evidence in this case, found the facts adversely to the contentions of the donees, as hereinbefore noted in this opinion.

This record supports the chancellor's findings of fact and these findings lead inevitably to the conclusion of law that the challenged deed, "being the act of one mentally incompetent, is void."

The decree is affirmed at appellants' cost.