## Capozzi, Appellant, *v.* Cummins.

Argued November 9, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Adolph L. Zeman,* with him *Robert L. Zeman,* and *Zeman & Zeman,* for appellants.

*Andrew W. Cummins,* for appellees.

OPINION BY GUNTHER, J., March 24, 1960:

This appeal is from the dismissal of a complaint in equity filed to prevent the obstruction of a public street. On August 20, 1956, Michael J. Capozzi and Anthony E. Capozzi filed their complaint alleging that they are owners of a piece of ground in the First Ward of the Borough of Canonsburg, Washington County, bounded on the south by Water Street, purchased by them on September 13, 1948. Clifford D. Cummins and his wife are the owners of an adjacent piece of ground, also bounded on the south by Water Street, which they purchased on October 11, 1943. It was alleged that the defendants erected iron posts across Water Street from a prolongation of their easterly property line so as to obstruct the use of Water Street by plaintiffs. It was further alleged that Water Street was

a public street and has been used as such by the public for many years as well as the owners, tenants and occupiers of the parcels of ground involved here as well as the predecessors in title. Defendants denied that Water Street was a public street and that plaintiffs had any right to complain. It was further alleged that Water Street was never dedicated nor accepted as a public street by the Borough of Canonsburg and that no private right to use said street by way of an easement was obtained by plaintiffs or their predecessors in title.

A hearing was held; testimony was taken, and certain documentary evidence was introduced. At the conclusion of said hearing, the court below made findings of fact and conclusions of law in which the contentions of the defendants were sustained and the complaint was dismissed. From this adjudication, exceptions were filed and argued, and the majority of the court en banc sustained the chancellor. Previous to this adjudication, however, plaintiffs petitioned the trial court to open the adjudication so that after-discovered evidence may be presented, consisting of certain minutes of borough council relating to Water Street and two ancient plans or maps. One of these plans purported to show that the road "from John Canon's Mill to Jacob Bausman's Ferry opposite Pittsburgh" (now Water Street) was considered by a board of viewers at No. 1 June Term, 1784 of Washington County. The other plan purported to show a draft of the Borough of Canonsburg showing the location of Water Street as well as the other streets then in the borough, indicating that Water Street was established and located long before the opening of Pike Street which is the main street in said borough. An answer was filed to this petition and, after argument, this petition was refused on the ground that such evidence was merely cumulative and some of it was clearly ir-

relevant. From the final adjudication, one of the plaintiffs, Anthony E. Capozzi, filed this appeal claiming that the adjudication of the court below in determining that Water Street was not a public street, and in holding that no right to an easement exists in a street abutting the property in question were in error.

Preliminarily, appellees urge that the findings of fact made by the chancellor, affirmed by the court en banc, have the effect of a verdict of a jury and cannot be reversed on appeal in the absence of clear error: *Worster Motor Lines, Inc. v. Ross*, 396 Pa. 490, 152 A. 2d 767; *Union Trust Company v. Schreck*, 335 Pa. 190, 6 A. 2d 428. In view of the conclusions we are about to express, however, we do not deem these cases as controlling the instant case.

In an effort to establish that Water Street has been and is a public street, plaintiffs established that the Borough of Canonsburg was incorporated in 1802. Prior to this time, there could have been no municipal action relative to the acceptance or rejection of any street or road by the borough. It therefore became relevant to establish the nature of Water Street both prior to and subsequent to the date the borough was incorporated. Plaintiffs, in support of their allegation that Water Street was a public street, introduced the following documentary evidence: (a) The John Canon Plan, recorded in Plan Book Volume I, page 491 as recorded in the office of the Recorder of Deeds of Washington County. This plan was laid out in 1788 and showed a road leading from McMillan's Meeting House, immediately north of Chartiers Creek, extending in an easterly direction. This road was identified as leading to Gamble's Mills and, after it crossed Chartiers Creek, to DeVore's Ferry, now known as Monongahela, Pennsylvania. This plan showed other roads leading into what is now known as Canonsburg, but the primary purpose of introducing this plan was to

show that Water Street is a part of the old road as shown in this plan. (b) A plan of Canonsburg, surveyed on August 17, 1875 by R. V. Johnson, as recorded in Deed Book 7, volume 5, page 37, which showed Water Street thereon. (c) A plan surveyed by John W. Creigh in January, 1885, as recorded in Volume 6, Book D, page 431, showing Water Street thereon. (d) Ordinance No. 4 of the Borough of Canonsburg in which the Creigh Plan was adopted as the official plan of the Borough. While this ordinance provided "that the streets and alleys marked thereon *and not at present opened*, shall be hereafter opened from time to time by ordinance, as a necessity therefor shall arise" (emphasis supplied), the status of Water Street remained unaffected because, in fact, the said street was already opened and known as a road leading to Monongahela, Pennsylvania. (f) Caldwell's Atlas, published in 1875, which showed the location of Water Street and the properties, including those presently in issue, abutting thereon. The deeds of the respective parties to this litigation were also introduced to show that their respective lots ran to or abutted on the northerly boundary line of Water Street. In addition, a deed for a lot on the opposite side of Water Street, or the southerly side of Water Street, was introduced to show that this deed also called for the southerly side of Water Street as an abutter. So far as the record or the adjudication disclose, there was no dispute that the road referred to in the ancient documents introduced included what is presently known as Water Street.

Around 1867 the Chartiers Valley Railroad acquired the right to construct a railroad through Canonsburg and in connection with this construction, a deep cut was made immediately adjacent to the properties here involved which took part of the width of Water Street and prevented the full use of the street by the abutting owners. There remained approximately fourteen feet

in width along that portion of the street now in question. Thus the use and utility of the street became limited.

The record also established that, except for the plans and the ordinance referred to herein, there were no official records of either opening or vacating of that portion of Water Street in question. As a matter of fact, the testimony disclosed that prior to the year 1892, the Borough of Canonsburg had no record of the opening of the other main and important streets although such streets were in use and in existence.

The testimony of several witnesses disclosed that in more recent years, the occupants of dwellings which fronted on Pike Street had built garages on the rear of their lots and that their only means of access was to travel on Water Street. Stables were established on some of these lots which were limited to access along Water Street. Coal houses were erected on the rear of other lots for a period of time and service was obtained through Water Street. Hershel M. Day, Borough Engineer from 1916 to 1936 and then again from 1949 to 1958, testified that during these periods Water Street was used by the public generally as a public thoroughfare.

In view of all this evidence, it is difficult to understand the holding of the court below that Water Street was not a public street. The ancient documents introduced into evidence established that Water Street was in use by the public as early as 1788. It is inconceivable that this road used to and from Gamble's Mill, McMillan's Meeting House and going on to Monongahela could be construed, in the light of the early history of this portion of Western Pennsylvania, as a private road. The meeting house, the mill and the ferry were vital cogs in the life of the community and the public, generally, made and used roads to take them to these

destinations. The court below, however, concluded that such ancient documents were not sufficient proof of corporate or municipal action of acceptance, and before such documents could be construed as evidence of the existence of a public road, there had to be evidence of corporate acceptance and corporate maintenance as a public road. The difficulty with this assumption is the fact that if such evidence were available, the ancient documents would not have been resorted to or establish such a fact. Furthermore, some of these documents were offered primarily to establish the public nature of Water Street at a time when corporate action was impossible, when the corporate existence of the Borough of Canonsburg was a plan of the future.

The court below properly concluded that there must be a dedication and acceptance by the public in order to establish the public nature of a road or street. But, as stated in *Kniss v. Borough of Duquesne*, 255 Pa. 417, 423, 100 A. 132, " ' . . . in the absence of a statutory restriction or provision to the contrary, the acceptance may be by the public at large, and need not be by . . . municipal or corporate authorities acting on behalf of the public . . . In the absence of a statutory restriction or prohibition, it is generally held that acceptance by the public may be shown by long continued user without any acts or conduct on behalf of the municipal corporation . . . ' " In support of its conclusion that there has been no acceptance of this street by municipal action, the court below refers to the Act of 1889, May 9, P. L. 173, 36 P.S. 1961, limiting the acceptance of a dedication to twenty-one years. We cannot see the application of this provision of the law. If, as the ancient documents show, there has been an acceptance by the public through use, acceptance is an accomplished fact and the statute would have no application. Such acceptance was, in fact, made by the public long before the Act of 1889 came into existence. Furthermore, this

Act relates to streets and roads in town plots or plans of lots and not to the situation which is presented in the instant case.

In this connection, we must refer to the refusal of the court below to open the adjudication for the reception of after-discovered evidence. Of particular importance was the proposed evidence to show that at No. 1 June Term, 1784, there was a viewers proceedings involving a "plot of road from John Canon's Mill to Jacob Bausman's Ferry opposite Pittsburgh." If the road referred to in this viewers proceeding was the same road which is presently known as Water Street, it is conceded even by appellees that "there would be nothing to argue about in this case." In the offer to prove that this road was, in fact, a portion of Water Street, plaintiffs also proposed to introduce two ancient plans which dealt with the location of Water Street in relation to Bausman's Ferry. These were discovered after the trial and particularly after the borough solicitor testified that he has made a careful examination of the records of the Borough of Canonsburg and that he could find nothing to indicate that the street in question was ever recognized as a public street. It seems to us that this offer was of sufficient importance to warrant opening up the adjudication. Such proposed evidence was not something that could have been easily discovered prior to trial because even the borough solicitor knew nothing about the existence of such records. While we are aware of the limitations on the right to offer after-discovered evidence, we believe the offer and the circumstances surrounding this case warranted the receipt of such evidence into the record. We do not construe such evidence as merely cumulative but, rather, determinative of the issue presented. Such evidence should have been permitted. But even without this evidence, we believe the public nature of Water Street was clearly established so as

to obviate formal dedication and acceptance by corporate action.

Assuming, however, that Water Street was not a public street, we believe the court below erroneously concluded that plaintiffs had no rights in said street by way of easement created by contract. The lots in question were never in a plan of lots. The rights of both parties to this litigation were predicated upon their respective deeds, both of which called for Water Street as an abutter. In *Fidelity-Philadelphia Trust Company, Trustee v. Forster*, 346 Pa. 59, 29 A. 2d 496, the Supreme Court held as settled law that "where land is conveyed as bounded by a street which is plotted on the city plan but not opened, the grantee not only takes the fee in the land bounded by the street, but by implication also acquires an easement over the bed of the unopened street, unless the circumstances attending the conveyance and the description of the grant clearly negative such implication." This is the law, not upon the theory of a dedication to public use, but upon an implied covenant, binding on the grantor and his assigns, that there is a way corresponding in its essential requirements to the street named in the deed. See also *Jones v. Sedwick*, 383 Pa. 120, 117 A. 2d 709. If Water Street was not a public street and not opened by the municipality, since such street was plotted on the official plan, it acquired the character of an unopened street over which the parties here had acquired an easement. In this respect, also, we find error in the adjudication.

Decree reversed.