Leslie T. SMITH, Appellant

v.

The BOROUGH OF NEW HOPE, A Municipal Corporation, Bucks County, Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided Aug. 5, 2005.

Carl L. Lindsay, New Hope, for appellant.

Robert O. Baldi, New Hope, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SIMPSON, Judge.

OPINION BY Judge McGINLEY.

Leslie T. Smith (Smith) appeals from the order of the Court of Common Pleas of Bucks County (trial court) in an action to quiet title in which the trial court decreed that The Borough of New Hope (Borough) was the owner of property known as "Dock Street."

On October 11, 2002, Smith instituted an action to quiet title by filing a complaint against the Borough. The subject property is a street, known as "Dock Street" which runs perpendicular between South Main Street and the Delaware River. The street is only 195 feet long and partially abutted on the north side by a building that is used for residential and commercial purposes and partially abutted on the south side by a building occupied by residential tenants. Smith owns the properties described above. In November 1996, Smith purchased the property to the south of "Dock Street" from Pamela Minford. The legal description of the property contained in the 1996 deed is as follows:

> BEGINNING at a point in a public road known as Main Street, said point being distant 20 feet on a course bearing North 80 degrees 27 minutes East from a slate monument located on the Westerly side of said public road, and also in the Southerly line of now or formerly a public alley known as Dock Street produced; thence (1) in an Easterly direction along the said Southerly line of Dock Street, North 80 degrees 27 minutes East, a distance of 195 more or less to a point in the line of low water mark of the Delaware River ...

Deed, November 8, 1996, between Pamela Minford and Leslie T. Smith at 1; Reproduced Record (R.R.) at 8a.

In August 2000, Smith purchased the property to the north of "Dock Street" from Hagai Rottenberg (Rottenberg). The legal description of the property in the 2000 deed is as follows:

BEGINNING at a point in the Easterly side of South Main Street (S.R.32) where it is intersected by the Northerly side of Dock Street and which is 10.00 feet Northerly of a stone set in said Dock Street to preserve the range of said Easterly line of South Main Street ....; thence extending up said Dock Street ... 94.59 feet more or less to the first mentioned point ...

Deed, August 31, 2000, between Hagai Rottenberg and Leslie T. Smith at 2; R.R. at 11a.

In her action to quiet title, Smith asserted that she should be proclaimed the owner of "Dock Street" pursuant to the provisions of Section 1724 of The Borough Code, 53 P.S. § 46724[1], because "Dock Street" was never "opened" or used by the public as a public street since it was laid out in 1865.[2] According to Smith, "Dock Street" was used as a "driveway" to access the dwellings and businesses which adjoined "Dock Street." Alternatively, she contended that only the first 70 feet of "Dock Street" is traversable, as the remaining 125 feet to the Delaware River is unimproved land covered with brush, and trees.

On December 11, 2002, the Borough filed its Answer, New Matter and Counterclaim and indicated that although its documentation as to dedication and actual opening of "Dock Street" was incomplete, it always acted as if the road was dedicated and opened. Answer, New Matter and Counterclaim of Borough of New Hope,

December 11, 2002, ¶ 12, at 2. Smith admitted the Borough's assertions that it regularly maintained the road at its own expense; that it plowed the road, that it salted the road, that it de-iced the road, put a metal guardrail and a curb along it, and put a "Dock Street" sign on it. Plaintiff's Reply to Defendant's New Matter, December 23, 2002, ¶¶ 21–26 at 2. The Borough further alleged that its residents and visitors used the road as a means to view the Delaware River, and further alleged that "Dock Street" was included in Borough plans, planning models and as part of its road system in various government publications published through the years. Answer and New Matter of Borough of New Hope, December 11, 2002, ¶ 12, at 2.

On July 19, 2004, the trial court held a bench trial. Smith offered the testimony of Frank R. Cosner (Cosner), a life long resident of the Borough and chief of the fire department, who testified that he was familiar with the roads in the Borough. Notes of Testimony, July 19, 2004, (N.T.) at 20–21; R.R. at 75a–76a. According to Cosner, "Dock Street" was never utilized as a street, except by the owners of the properties along it. N.T. at 22; R.R. at 77a. Cosner stated that a 70 to 100 year old building encroaches upon "Dock Street." N.T. at 24; R.R. at 79a. On cross-examination Cosner admitted there was a metal guardrail along the north side of the road. He did not know who put it there. N.T. at 26; R.R. at 81a.

Smith's husband, Thomas Smith (Mr.

1. Act of February 1, 1966, P.L. (1965), *as amended*.

2. In 1865 an order was entered in the Bucks County Orphans Court authorizing the subdivision of lands owned by Lewis S. Coryell (Coryell) which included the creation of "Dock Street" and "Delaware Street." The parties concur that this is when "Dock Street" was "laid out."

Smith), also testified.[3] He first learned of "Dock Street" in August of 2000, when his wife purchased the property at 166 and 170 South Main Street from Rottenberg. When he reviewed the legal description of the property at the settlement, he noticed a "problem." The property being described was too short, meaning that the property to the south was approximately 195 feet in one direction from Main Street to the Delaware River, and the description in the 2000 deed described it as approximately 90 feet long. N.T. at 46–47; R.R. at 101a–102a. The settlement was consequently postponed for about a month until the title company determined if a clear title could be conveyed. It was at that time that Mr. Smith learned that "Dock Street", and another street that ran parallel to the Delaware River, called "Delaware Street", were laid out in the 1850's but never opened. N.T. at 47; R.R. at 102a.[4]

Mr. Smith acknowledged the Borough constructed a 15–foot long stone retaining wall along both sides of "Dock Street" in 1999, as part of a Borough sidewalk project. N.T. at 42–43; R.R. at 97a–98a. He stated that the Borough also put up a street sign around that time. He also acknowledged that the Borough plowed the street when it snowed. N.T. at 60; R.R. at 115a. Mr. Smith testified that the only people who used "Dock Street" were his wife's five tenants, his office workers, delivery people, and people who occasionally used it to turn around and to view the Delaware River. N.T. at 46, 57; R.R. at 101a, 112a.

Smith also offered the testimony of Jacob C. Fell (Fell), a long-time resident of the Borough and a member of the Borough Council street committee. Fell related that "Dock Street" was never used by anyone but the tenants of the adjacent properties. N.T. at 65; R.R. at 120a. The improvements to "Dock Street" made by the Borough were only made to the first 70 feet. Fell testified that as a young boy in the 1920's, he had no idea what the Borough did with "Dock Street." N.T. at 66; R.R. at 121a. He did not remember, as a young man in his twenties and thirties, seeing a sign that said "Dock Street" and he did not recall during that time being aware of a street called "Dock Street." N.T. at 70; R.R. at 125a.

The Borough called one witness, Thomas J. Carroll (Carroll), the Borough's director of public works. Carroll testified that when the Borough put the new curbing in at the opening of "Dock Street" in 1999, the Borough used approximately 18 to 25 tons of fill. N.T. at 76; R.R. at 131a. Afterwards, the Smiths complained that their cars bottomed out because the grade was too abrupt. Carroll and three other Borough workers used two to four more tons of asphalt in to improve the grade. N.T. at 85; R.R. at 140a. The Borough installed the guardrail, and the slab stone retaining wall. N.T. at 77; R.R. at 132a–133a. The Smiths were not charged for these projects. N.T. at 85; R.R. at 140a. Carroll recalled that the "Dock Street" sign was there when he first started 14 years ago. He replaced the sign when "it ended up missing on numerous occasions." N.T. at 78–79; R.R. at 133a–143a. The Borough routinely plowed "Dock Street."

On July 20, 2004, the trial court denied Smith's request to quiet title. The trial

---

3. Smith did not testify.

4. The parties do not dispute that *"Delaware Street"* was never opened.

court recognized that case law which interprets Section 1724 of The Borough Code, 53 P.S. § 46724, directs that the 21–year period runs from the date the street at issue was "laid out" and not from the date a complaint is filed. However, the trial court held that "fairness dictated" that Section 1724 of The Borough Code, 53 P.S. § 46724, should be viewed in the context of whether, in the *last* twenty-one years, "Dock Street" had been open to, or used by the public. The trial court noted: "the time sequence of these [other] cases is much different from the instant matter and their holdings more in keeping with the rationale of Section 1724." Trial Court Opinion, December 17, 2004, at 4. The trial court's decision was based in part, on the inequities of requiring the Borough to prove facts which occurred over 100 years ago to maintain ownership of a property which, in more recent years, was open to the public and maintained by the Borough at a considerable expense:

> Evidence at trial established that at various times in the past 21 years New Hope Borough has:
>
> —Maintained a street sign designating the property as "Dock Street";
>
> —Paved/blacktopped the property, and maintained it by fixing potholes;
>
> —Installed a guardrail, plowed snow, and salted the property; and
>
> —Maintained a wall on the south side of Dock Street.
>
> The evidence at trial also established that residents of New Hope Borough and employees of New Hope businesses use the property to travel to and from their residences and places of employment.

Trial Court Order, July 20, 2004, at 1 (Emphasis added).

■ Smith raises five issues on appeal[5]: (1) whether the trial court erred in its interpretation of Section 1724 of The Borough Code, 53 P.S. § 46724? (2) whether the trial court properly invoked the doctrine of laches? (3) whether the trial court properly determined the entire length of "Dock Street" was a public street? (4) whether the trial court properly determined that the evidence supported the use of "Dock Street" by the general public? and (5) whether the trial court properly considered improvements made in the late 1990's as proof that the Borough accepted the road in accordance with the provisions of The Borough Code?

### 1. *Issues 1, 4 and 5*

■ Section 1724 of The Borough Code, 53 P.S. § 46724, provides:

**Effect of failure to open street after its laying out**

Whenever any street shall have been laid out and shall not have been opened to, or used by the public for a period of twenty-one years, such street shall not thereafter be opened without the consent of at least fifty-one percent of the number of owners of the abutting real estate and without the consent of the owners of at least fifty-one percent of the property abutting such street, based on a front foot basis.

The trial court noted that due to the passage of time the Borough was unable to

---

**5.** On review of a trial court's ruling in an action to quiet title, this Court is limited to determining whether the findings of fact are supported by substantial evidence, whether an error of law has been committed or whether there has been an abuse of discretion. *Bride v. Robwood Lodge,* 713 A.2d 109 (Pa.Super.1998).

demonstrate the actual events and circumstances surrounding the opening of "Dock Street", or that "Dock Street" was opened within 21–years after Coryell's 1865 offer of dedication. Smith asserts that the trial court's inquiry should have stopped there, and that the trial court erred when it went on to consider testimony surrounding the recent and present use and maintenance of "Dock Street" as a public road. Smith argues that since there was no evidence that the Borough took any action with regard to "Dock Street" until "the last possibly twenty-five years" [6] the Borough lost its right to "Dock Street" under Section 1724 of The Borough Code, 53 P.S. § 46724. This Court does not agree.

■ Section 1724 of The Borough Code, 53 P.S. 46724, applies to unused streets; streets which were laid out on paper, but never actually opened by the municipality or used by the general public. The legislature enacted this statute "in order to relieve land from the burden of public servitude created by a dedication in which the dedicated streets have been laid out but not opened." *Lillo v. Moore,* 704 A.2d 149, 153 (Pa.Super.1997), *appeal denied,* 555 Pa. 713, 724 A.2d 349 (1998).

Cases which fall under this section (and identical sections of other statutes) include *Borough of Lehighton v. Katz,* 75 Pa. Cmwlth. 388, 462 A.2d 889 (1983), (where the paper street in question was impassible and never used by the public as a street), *Pawlowski v. Borough of Barnesboro,* 118 Pa.Cmwlth. 375, 545 A.2d 965 (1988), (where the paper street in question was a mere foot path through woods and grassy area), *Quicksall v. Philadelphia,* 177 Pa. 301, 35 A. 609 (1896), (where the paper street was actually the site of an active stone quarry), and *Borough of Edgeworth v. Lilly,* 129 Pa.Cmwlth. 361, 565 A.2d 852 (1990), (where a chicken coop, a swimming pool, numerous types of fences and a brick wall existed, effectively denying ingress or egress to the river by the public).

■ Section 1724 of The Borough Code, 53 P.S. 46724, and the caselaw interpreting it do fix a 21–year time limit within which the Borough must accept the dedication. *See Lillo; Borough of Edgeworth.* However, this section has no application where the evidence establishes the public nature of the street, as opposed to a mere "paper street" which exists in a subdivision plan or ordinance in theory only.

■ In the present controversy, the evidence supported the trial court's conclusion that "Dock Street" was used daily by the public and that the Borough maintained it for at least the past 25 years. The evidence at trial established that the residents of the Borough and employees of businesses used the property to travel to and from their residences and places of employment. Members of the public, including several of Mr. Smith's employees, and residential tenants and their guests, used "Dock Street" on a daily basis. The evidence also established that visitors to the Borough used "Dock Street" to view the Delaware River.[7]

This controversy is not like the cases where the disputed "street" existed merely

---

**6.** Appellant's Brief, February 8, 2005, at 8.

**7.** Smith asserts that this evidence was insufficient to establish public use because "the only people who use [Dock Street] are the Smiths, the Smiths' residents [who live in the three-unit townhouse] or people having business to do with the Smiths' magazine publishing company which abuts Dock Street." Appellant's Brief, February 8, 2005, at 12. This argument is rejected. This Court agrees with the trial court that the open and uninhibited

on paper. Here, the 21–year limitation period is inapplicable despite the fact the Borough was unable to demonstrate that the street was accepted within 21 years of its dedication because the evidence clearly demonstrated that the street in question was used as a public thoroughfare, i.e., it did not just exist on paper.

In *Capozzi v. Cummins*, 191 Pa.Super. 500, 159 A.2d 536 (1960), Michael J. Capozzi and Anthony E. Capozzi (the Capozzis) brought an action in equity against Clifford D. Cummins and his wife (the Cummins), to prevent the Cummins' obstruction of Water Street. The Cummins denied that Water Street was a public street because it was not accepted by the Borough of Canonsburg within 21–years of its dedication. Other than the ordinance and plan, there was no official record of either opening or vacating that portion of Water Street in question. The testimony of several witnesses disclosed that in more recent years, the occupants of dwellings which fronted on Pike Street had built garages on the rear of their lots and that their only means of access was to travel on Water Street. Stables were established on some of these lots which were limited to access along Water Street. Coal houses were erected on the rear of other lots for a period of time and service was obtained through Water Street. The Borough engineer testified that Water Street was used by the public generally as a public thoroughfare. The trial court dismissed the complaint and held that there must be evidence of municipal acceptance and maintenance as a public road within 21 years of dedication in order to establish a public street.

In *Capozzi*, the Superior Court reversed: "In the absence of a statutory restriction or prohibition, it is generally held that acceptance by the public may be shown by long-continued use without any acts or conduct on behalf of the municipal corporation." *Capozzi*, 159 A.2d at 539. With regard to the trial court's reliance on the Act of 1889, May 9, P.L. 173, 36 P.S. § 1961 (the predecessor to Section 1724 of The Borough Code, 53 P.S. 46724), which limited the Borough's acceptance of a dedication to twenty-one years, the Superior Court stated:

We cannot see the application of this provision of the law. If, as the ancient documents show, there has been an acceptance by the public through use, *acceptance is an accomplished fact and the statute would have no application.* Such acceptance was, in fact, made by the public long before the Act of 1889 came into existence. *Furthermore, this Act relates to streets and roads in town plots or plans of lots and not to the situation which is presented in the instant case.*

*Capozzi*, 159 A.2d at 539 (Emphasis added).

Here, as in *Capozzi*, "Dock Street" exists, and based upon the record was never not used continuously by the public prior to the initiation of Smith's action to quiet title. The trial court was correct to conclude that the Borough should not be burdened with having to provide steadfast evidence of the circumstances of the acceptance and that such an event occurred within 21 years of the dedication. In other words, the statute is not applicable where

use of "Dock Street" by Borough residents to access the river, and the commercial and multi-unit residential buildings along the street, constituted a public use. The public

character of the property was not lost merely because Smith now happens to own title to both properties.

the Borough's acceptance was an established fact, that is, that the street was a public right of way and has historically been and is currently being used by the public as a means of travel.

*Appeal of Sturges,* 240 Pa. 44, 87 A. 592 (1913), provides further support that the 21–year limitation period in Section 1724 of The Borough Code, 53 P.S. § 46724, is not applicable to this case. There, viewers were appointed to ascertain damages and assess the costs of paving, curbing and grading a street called Walnut Street. E.B. Sturges (Sturges), an abutting property owner, defended against the assessment and argued that Walnut Street had never been accepted or legally occupied by the City within 21 years of the dedication.

Our Supreme Court did not agree that the case fell within the purpose and intent of the Act of 1889 [8] relative to the opening of streets. As in this controversy, the Supreme Court could not determine from the evidence when public travel began on the street or when the city first made improvements to it. The Supreme Court was unable to ascertain whether those events took place within 21 years from the date of the offer of dedication. Notwithstanding, the Supreme Court concluded that the Act of 1889 applied to *unused* streets and that public use was sufficient to take the street out of the operation of the Act. There, as in this case, the property in dispute *was presently used as a street.* The street had been filled and graded within the last 20 years; it was paved and curbed at the intersecting avenues; and there was traffic along it.

There was no evidence that Walnut Street was anything other than a public highway or that there was any conveyance of the street to Sturges.

Moreover, the Court noted that Sturges had purchased the property according to a plan made by the owner showing his lots to be on Walnut Street. The Court cited the well known principle where a person purchases lots according to a plan showing the lots to be on a street, a covenant was implied that the street would forever be opened to the public. *Sturges,* 240 Pa. at 51, 87 A. at 594.

Here, as in *Capozzi* and *Sturges,* the trial court received extensive testimony from the parties concerning the current and historical use of "Dock Street" as a means of ingress and egress for the individual abutting properties. The testimony disclosed that in recent years, the public, i.e., the occupants, tenants, visitors and guests of the three-unit town house, dwellings and businesses which fronted on South Main Street, used "Dock Street" to access those properties. The testimony further showed that before Smith purchased the property, the building to the north was a mill house and public access to and from was gained via "Dock Street." Further, the testimony established that for years the Borough maintained "Dock Street", put up a sign, curbed it, paved it and plowed it to facilitate travel, and installed a guardrail to protect those who pass over it. Indeed, Smith conceded that the Borough has maintained "Dock Street" for the *past 25 years.* Appellant's Brief, February 8, 2005, at 8. As in *Sturges,* the

---

8. Section 1 of the Act of 1889, P.L. 173, 36 P.S. § 1961, *as amended,* was, in fact, a predecessor to Section 1724 of the Code, 53 P.S. § 46724, having been repealed insofar as it related to boroughs by the Act of May 14, 1915, P.L. 312. Both provisions contain substantially the same language. Courts have consistently relied on decisions which involve Section 1 of the Act of 1889, 36 P.S. § 1961, in order to resolve issues involving Section 1724 of The Borough Code, 53 P.S. § 46724. *See, e.g., Borough of Lehighton.*

evidence supported the trial court's conclusion that "Dock Street" was used and had been used as a public street for at least the past 25 years. Smith purchased the property and in both deeds the properties were described as abutting "Dock Street." There was nothing in the deed which indicated (as opposed to the case of "Delaware Street" which was expressly described as being "unopened") that "Dock Street" was not a street that was opened and used by the public.

■ Accordingly, this Court agrees with the trial court's conclusion that Section 1724 of The Borough Code, 53 P.S. § 46724, was not intended to deprive or divest the Borough of its rights to a street simply for the reason that the Borough was unable to provide unyielding proof of exactly when and how its forefathers manifested their original intent to use the street as a public street. Applying the principles enunciated in *Capozzi* and *Sturges*, this Court concludes that "Dock Street" was not a "paper street" within the meaning of Section 1724 of The Borough Code, 53 P.S. § 46724. The trial court did not err when it concluded that the 21–year limitations period did not operate to deprive the Borough of its rights, title or interest to "Dock Street".

### 2. *Issue 3*

■ Finally, Smith contends that, assuming the trial court was correct when it concluded "Dock Street" was a public street; the trial court erred when it concluded that the entire length of "Dock Street" was a public street.

In *Borough of Lehighton*, property owners, Gordon and Shirley Katz brought a quiet title action seeking title to one-half of portion of an unopened street known as Ochre Street. This Court held that the borough failed to establish an implied acceptance of dedication within the applicable 21–year limitation period, where the record showed that portion of Ochre Street remained impassible and had never been opened or used by public.

Presently, as in *Borough of Lehighton*, the undisputed evidence established that only the first 70 feet of "Dock Street" was paved and maintained by the Borough; the remaining 125 feet was soft ground and overgrown with vegetation. The Borough never disputed that that portion of "Dock Street" was not used as a road or a driveway and that it was virtually impassible. The Borough's witness testified that the Borough placed stones in the middle of the area called "Dock Street" in order to *prevent* cars from traveling on that section which led directly into the Delaware River. This Court has reviewed the photographs that were introduced by Smith at the trial, Exhibits "H", "J", "K"; R.R. at 155a, 157a, 158a, which unmistakably show that the remaining 125 feet of the area known as "Dock Street" lacks even a road bed. As there was no challenge to the authenticity of the photographs, or claim that they did not fairly depict the condition, these pictures speak for themselves.

■ The opening of a portion of a street does not affect the status of the remaining unopened portion. *Milford Borough v. Burnett*, 288 Pa. 434, 136 A. 669 (1927); *Vendetti Appeal*, 181 Pa.Super. 214, 124 A.2d 448 (1956), *allocatur denied; Mynyk's Appeal*, 175 Pa.Super. 339, 104 A.2d 173 (1954); *Shamokin v. Helt*, 250 Pa. 80, 95 A. 385 (1915).

Here, the evidence demonstrated that a mere portion of "Dock Street" was used by the public, and that portion consisted only

of the first 70 feet of paved road bed. Consequently, the trial court erred when it concluded that the Borough retained all legal rights and duties as exist and apply to the entire length of "Dock Street" from Main Street to the Delaware River.

For the foregoing reasons, the order of the trial court is affirmed in part and reversed in part and the case is remanded for entry of a decree consistent with this opinion.[9]

### ORDER

AND NOW, this 5th day of August, 2005, the order of the trial court in the above captioned appeal is affirmed in part and reversed in part and the case is remanded for entry of a decree consistent with this opinion. Jurisdiction relinquished.

9. As previously noted, the trial court concluded, in the alternative, that Smith's action to quiet title was barred by laches. Because this Court concludes that Smith's action to quiet title, with respect to the first 70 feet of "Dock Street" was properly denied in light of the public use of that portion of "Dock Street", we need not address this alternative basis for denying her action to quiet title. As the trial court's application of the doctrine of laches was limited only to the portion of Dock Street which was paved, plowed and re-graded by the Borough at the Borough's expense, this Court need not address whether the doctrine laches bars Smith's action to quiet title to the remaining 125 feet of Dock Street which the record shows was never maintained by the Borough.