Wensel *v.* North Versailles Township, Appellant, et al.

486

Argued April 21, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*M. E. Evashwick,* of *Seif, Evashwick & Best,* for appellant.

*Saul Chersky,* for appellee.

OPINION BY CUNNINGHAM, J., July 13, 1939:

About 11:30 P. M. on the night of August 14, 1937, plaintiff was a passenger in a Willys sedan, owned by him but at the time being driven by the additional defendant, Terence Manning, in a northerly direction along Tinstman Avenue, an alleged public thoroughfare in the defendant township. At a point seventy-five feet

north of the intersection of Tinstman Avenue with Mary Street, running east and west, a portion of the roadway of Tinstman Avenue, which was there very narrow, gave way and precipitated the car and its occupants into the bottom of a ravine or gully, some fifty feet in depth. The car, valued in the statement at $125, was demolished and plaintiff suffered personal injuries.

The original defendant is a township of the first class and Tinstman Avenue, as laid out therein, begins at Rebecca, an east and west street, and running north intersects and crosses three parallel east and west streets—Mary, Emma and Cornelia, in the order named. Contending that Tinstman Avenue was at the date of the accident a public thoroughfare, so negligently maintained by the township that its negligence was the proximate cause of the accident, plaintiff brought an action of trespass to recover damages from the township for the destruction of his car and for his personal injuries.

In his statement of claim he alleged, inter alia, that the block on Tinstman Avenue, between Mary and Emma Streets, had "been dug up by [the township] for the purpose of placing a sewer thereunder and later the dirt had been put back over the sewer but the roadway was negligently allowed and permitted by [the township] to be and become loose, crumbly and infirm and the said street was otherwise defective and dangerous to the traveling public"; that on each side of Tinstman Avenue there were ravines, the one on the easterly or right-hand side of the avenue constituting "an abrupt drop" of more than fifty feet; that the roadway of Tinstman Avenue was "wide enough for only one vehicle to proceed in either direction"; and that the municipality, although permitting the street to remain open for the use of the traveling public, negligently failed to provide proper guards or barriers to prevent vehicles using it "from dropping or falling over either side."

The tenth paragraph of the statement reads: "That when the said automobile came to a point or place approximately seventy-five feet north of the intersection of Tinstman Avenue and Mary Street and was being operated by the said Terence Manning in a careful and lawful manner at a low rate of speed, part of the dirt surface of said Tinstman Avenue at such point or place which was in a loose, crumbly and otherwise dangerous and unsafe condition, gave way, causing the operator of such automobile to lose control thereof, the automobile to run over the edge of the said street on the easterly or right-hand side thereof, to overturn, and to be precipitated into the ravine or cut to the right of Tinstman Avenue."

The township did not file an affidavit of defense, but brought upon the record, by scire facias, Terence Manning, the driver of plaintiff's car, as an additional defendant, alleging that the latter's negligence in carelessly and recklessly driving plaintiff's car in a place not a public thoroughfare was the sole cause of the accident.

The jury returned a verdict of $500 for plaintiff and against the township alone, with a finding in favor of Manning, the additional defendant. The township's motions for judgment n. o. v., or a new trial, were overruled and judgment entered on the verdict. Upon this appeal from that judgment, the assignments covered by the township's statement of questions involved relate to the refusal of its point for binding instructions and the denial of its subsequent motion for judgment n. o. v.

Appellant's principal contentions are, (a) that plaintiff failed to show any breach of duty upon its part, because the evidence does not warrant an inference that Tinstman Avenue, at the point of the accident, was a public highway and maintained as such by appellant, and (b) that plaintiff, through his agent, the driver of his car, was guilty of contributory negligence, as a matter of law, in attempting at night to negotiate Tinst-

man Avenue where it was nothing more than "a narrow dirt fill, six and one half feet wide, covering a sanitary sewer," and not intended to be used as a street.

Viewing the testimony at the trial in the light most favorable to plaintiff and giving him the benefit of all reasonable inferences of fact, as well as of any testimony of appellant's witnesses favorable to him, the accident was shown to have occurred under the following circumstances and conditions: Plaintiff, a resident of Turtle Creek, who did not have an operator's license, asked Terence Manning, a neighbor, to drive his 1931 Willys sedan to a picnic at Kennywood Park on the evening of August 14, 1937. On the return trip Terence Manning drove the car; plaintiff sat in front on the right side of the driver; plaintiff's daughter, Charlotte, sat immediately behind the driver on the left side of the rear seat; Francis Nee sat next to her, and Terence Manning's sister Mary sat on the right side of the rear seat.

They left Kennywood Park about ten o'clock p. m. and Manning drove back through Duquesne, McKeesport and West Wilmerding Borough. Arriving in North Versailles Township, Manning drove a short distance on Kline Avenue, a paved north and south street fifty feet wide, then east on Mary Street, forty feet wide and unpaved, to the point at which Mary Street and Tinstman Avenue intersect and cross each other at right angles. He there parked the car facing east, got out, and went into a house to visit Joe Grobowski.

According to Kline Brothers' plan of lots, laid out and recorded in 1890, a blueprint copy of which was received in evidence at the trial, Tinstman Avenue is, as stated, a straight north and south street, parallel with, and two blocks east of, Kline Avenue; it also is laid out as fifty feet wide. The portion of Tinstman Avenue here involved is the block between Mary and Emma Streets.

Manning remained at Grobowski's residence for about

fifteen minutes, while the other occupants of the car, including plaintiff, waited for him.

Manning, who was not familiar with the streets or roads in this vicinity, started the car in low gear about 11:30, turned left, i. e., north, from Mary Street into Tinstman Avenue, and proceeded along Tinstman Avenue at five miles per hour. Although the road was dry, the atmosphere was foggy and misty. When he had gone about seventy-five feet in low gear, he felt the roadway give way and slide from under the right side of the car. He made a vain effort to turn the car to the left; it slid over and down the steep embankment on the right and into a gully or ravine rolling over five times before coming to rest at the bottom.

Plaintiff's evidence indicated the passageway at this point was composed of dirt, covered with ashes, that it was from fourteen to fifteen feet wide; and that it had a four foot bank on the left side and an unguarded, almost perpendicular, drop of fifty feet or more into the ravine on the right.

Appellant contended, and introduced evidence for the purpose of showing, that Tinstman Avenue at this point was never more than a "paper street"; that prior to the construction of a sewer along it between Mary and Emma Streets in 1934-1935 it was merely a series of deep gullies and ravines, sloping down toward the Pennsylvania Railroad tracks to the east; that after the sewer was put in, the cone-shaped five foot deep loose dirt fill was only six and one half feet wide at the top and was never intended for use by the public for vehicular travel.

1. It is not questioned that the laying out of Tinstman Avenue on Kline Brothers' recorded plan of lots, constituted ample evidence of a dedication of that thoroughfare as shown on the plan: *Weida v. Hanover Twp.*, 30 Pa. Superior Ct. 424, 426. Compare *Gass et al. v. City of Pittsburgh*, 91 Pa. Superior Ct. 290, 296. Undoubtedly a dedication of a street or way requires

an act or acts of acceptance upon the part of a municipality before the latter may be held liable for failure properly to maintain, and repair the street: *Downing v. Coatesville Boro.*, 214 Pa. 291, 63 A. 696; *Pittsburgh v. Pittsburgh & L. E. R. R. Co.*, 263 Pa. 294, 106 A. 724, and cases cited at page 302.

An acceptance by the municipality, however, may be implied as well as express, and may be established by showing acts of dominion over or control of the street by the proper authorities. As this court stated in *Gass v. City of Pittsburgh*, supra, [91 Pa. Superior Ct. 290, 297]: "In *Ackerman v. City of Williamsport*, 227 Pa. 591; *Kniss v. Borough of Duquesne*, 255 Pa. 417; and *Felt v. West Homestead Borough*, 260 Pa. 11, it is clearly shown that, in the absence of a formal acceptance, the liability of a municipality to keep a dedicated street in a safe condition for public travel may be asserted and established upon two separate and distinct grounds, either of which is sufficient to fix liability upon the municipality. The first of these grounds is through long continued public user without any formal act of acceptance and the second *through authorized or ratified municipal acts* from which an acceptance may be implied." (Italics supplied) See also *O'Brien v. Jeannette Boro.*, 128 Pa. Superior Ct. 443, 194 A. 314.

In affirming a finding by the chancellor that a street across which the defendant had erected a wall was not a public way, the Supreme Court said in *Milford Boro., v. Burnett*, 288 Pa. 434, 438, 136 A. 669: "Streets or highways, apart from statutory methods, may be created by dedication, express or implied, and by prescription. ...... The acceptance [of a dedicated street] may be express or implied. Implied acceptance may be indicated by some definite authoritative act of the municipality (*Steel v. Huntingdon Borough*, 191 Pa. 627, 630; *Wahl v. McKees Rocks Borough*, 64 Pa. Superior Ct. 155; *Grant v. Dickson City Borough*, 235 Pa. 536), or by long continued user by the public as a way (*Acker-*

*man v. City of Williamsport*), or a combination of municipal acts and public use (*Kniss v. Borough of Duquesne*, 255 Pa. 417)." See also *Phila. Electric Co. v. Phila.*, 303 Pa. 422, 432, 154 A. 492.

As tending to establish an implied acceptance of Tinstman Avenue by the township authorities, the evidence disclosed the following: In March of 1907 and February of 1911, the appellant township, by ordinances Nos. 22 and 27, respectively, gave the Highland Grove Traction Co. the right to operate a street car line "along Tinstman Street through Kline Brothers' Plan of Lots, and lands of Rebecca Taylor to Wilmerding Borough line"; the company, however, never accepted the franchise nor built the line.

During 1934-1935 an eight inch sanitary sewer was constructed in the bed of Tinstman Avenue between Cornelia and Rebecca Streets, including the block between Emma and Mary Streets, as shown on Plaintiff's Exhibit E. The work was done by the W. P. A. authorities, under the supervision of the township commissioners, who employed R. M. Douglas, a civil engineer, to draw plans and supervise the work. Concrete supports were necessary in this block to carry the sewer across the above described gullies and a loose dirt fill five feet in depth was placed over the sewer to protect it.

Both the secretary of the township commissioners and the township road superintendent admitted that all of Tinstman Avenue, as laid out on Kline Brothers' plan, was maintained by the township as a public street, open to vehicular traffic, except, as they asserted, the section between Mary and Emma Streets here in question. Pedestrians admittedly walked over this portion of Tinstman Avenue, and on the night of the accident a car coming from the opposite direction, i. e., from Emma to Mary, stopped when its occupants observed the accident, picked up the victims, continued south on Tinstman Avenue to Mary, and then to the office of a doctor.

Stanley Pola, who lived at No. 40 Tinstman Avenue, one of the houses just north of the point of the accident, and used Locust Alley (paralleling Tinstman to the west) to enter his garage, testified he asked for and received from the township superintendent of roads a load of ashes which he put on Tinstman Avenue to make a path.

We think these circumstances were sufficient to take this issue to the jury and to support a finding of an acceptance by the township of the dedication of Tinstman Avenue, throughout its entire length, as a public street open to vehicular traffic, under the principles announced by our Supreme Court in *Pittsburgh v. Pittsburgh & L. E. R. R. Co.*, supra, [263 Pa. 294, 302, 106 A. 724] as follows: "In our opinion the acts of the borough and city, in making reference to Water Street in numerous ordinances, establishing the grade thereof, dumping earth thereon, building and repairing wharves within its lines and granting franchises to railroad companies to lay and operate tracks therein, constituted an acceptance of the dedication. And we are still of the opinion expressed in *McKee v. Penna. R. R. Co.*, 255 Pa. 560, that the city's granting permission to the railway companies to construct and operate tracks in Water Street constituted an acceptance of the dedication. See *Phila. v. Thomas's Heirs*, 152 Pa. 494."

The case of *Phila. v. Thomas's Heirs*, 152 Pa. 494, 25 A. 873, cited in the foregoing opinion, is particularly applicable, as it was there held that when a street is dedicated by lot owners, and laid out on a confirmed city plan, but never physically opened over the land, an entry upon the street pursuant to an ordinance and laying a sewer, necessarily implies an acceptance of the dedication. See also *Steel v. Huntingdon Borough*, 191 Pa. 627, 43 A. 398, and *Sharon Borough v. Pennsylvania Co.*, 44 Pa. Superior Ct. 526.

Whether the block in question should have been closed, guard rails erected, or other adequate precau-

tions taken, to protect drivers and occupants of cars using Tinstman Avenue at the place of the accident was also a question for the jury. The general duty resting upon the appellant township was thus defined in *Winegardner v. Springfield Twp.*, 258 Pa. 496, 500, 102 A. 134. "It is the duty of a township to exercise reasonable care to keep its highways in a safe condition for ordinary travel. It must anticipate and provide against danger to persons using its roads for travel conducted in the ordinary manner. It must remove obstructions and defects which would naturally or probably cause injury to those persons who might have occasion to travel upon the highways. This duty is not confined to maintaining the bed of the road in a solid and safe condition and clear of obstructions, but extends to the erection of barriers or other devices for guarding unsafe or dangerous places on or along the road. If a public road through a township is so dangerous by reason of its proximity to a precipice that common prudence requires extra precaution, in order to secure safety to travelers, the township is bound to use such precaution and the omission to do so is negligence: *Scott Twp. v. Montgomery*, 95 Pa. 444." In the later case of *Frye v. Washington Twp.*, 291 Pa. 240, 244, 139 A. 871, the duty to "provide guard rails to protect from obvious dangers" was reiterated.

Each case must depend upon its own facts, but we are satisfied that here, as in *Burrell Twp. v. Uncapher*, 117 Pa. 353, 11 A. 619; *Plymouth Twp. v. Graver*, 125 Pa. 24, 35, 17 A. 249; *Wilson v. O'Hara Twp.*, 14 Pa. Superior Ct. 258; *Curry v. Luzerne Borough*, 24 Pa. Superior Ct. 514, and *Prinkey et al. v. Twp. of Dunbar*, 105 Pa. Superior Ct. 326, 330, 161 A. 640, the question of appellant's negligence was one of fact for the jury. The circumstance that the portion of Tinstman Avenue between Emma and Mary Streets was somewhat on the edge of the built up portion of this section of the township did not relieve the latter from the duty of proper

maintenance. The jury having found, as the verdict indicates it did, that the block here involved was a thoroughfare open to and used by the public, "the fact that its location was in the outskirts of the [township] and little used, although a matter to be considered in determining the extent of the municipality's duty with respect to its condition, did not relieve the [township] from its obligation of maintaining its highway in a reasonably safe condition for public travel under all the circumstances: *Wall v. Pittsburgh*, 205 Pa. 48; *Emery v. Phila.*, 208 Pa. 492, 498": *McKelvey v. Juniata Borough*, 265 Pa. 56, 58, 108 A. 205.

2. It cannot be said that Terence Manning, the driver of plaintiff's car, was guilty of contributory negligence as a matter of law. He had visited Grobowski at the corner of Mary Street and Tinstman Avenue several times at night, but had never been there before with a car and was unfamiliar with the portion of Tinstman Avenue where the accident occurred. "It is only where the facts plainly show that the injured person had a choice of two ways one of which was safe and the other of which was subject to risks and danger, that it can be said as a matter of law that he was guilty of contributory negligence: *McMananon v. Hanover Twp.*, 232 Pa. 439, 445": *Mickey v. Twp. of Georges*, 96 Pa. Superior Ct. 437.

Although there was a street light at the intersection and the lights on plaintiff's car were burning, and the roadway dry, the atmosphere was foggy and misty. Manning testified the surface of the street was "between fourteen and fifteen feet" wide. For the purposes of this appeal, his statement must be accepted as against the contention of appellant that it was only six and a half feet in width. He proceeded in low gear at five miles per hour. He could assume that the visible roadway he drove over would not give way beneath the car. In such circumstances, the question of any contributory negligence upon his part was a matter for determination

by the jury. For similar reasons plaintiff was not himself contributorily negligent, as a matter of law, because of any action or inaction on his part. He, too, was unfamiliar with the street and, like the driver, was justified in assuming that the roadway he saw before him would not give way beneath his car. Whether or not the driver or plaintiff could or should have observed, under the weather conditions described by them, the risk involved in driving north on Tinstman Avenue, was for the jury.

Having concluded the trial judge would not have been justified in convicting either Manning or plaintiff of contributory negligence as a matter of law, a further discussion of this branch of the case is unnecessary. No complaint is made on behalf of appellant with relation to the accuracy or adequacy of the charge; its fundamental contention is that binding instructions should have been given in its favor. A majority of the members of this court are of opinion such instructions would have been improper.

Judgment affirmed.