**Michael LILLO and Carol Lillo, Appellants,**

v.

**W. Gerald MOORE and Kay Eby Moore.**

Superior Court of Pennsylvania.

Argued Oct. 16, 1997.
Filed Dec. 17, 1997.

Roger E. Legg, Coatesville, for appellants.

Mary Ann Rossi, West Chester, for appellees.

Before CIRILLO, President Judge Emeritus, and EAKIN and OLSZEWSKI, JJ.

CIRILLO, President Judge Emeritus:

Michael and Carol Lillo appeal from the order entered in the Court of Common Pleas of Chester County denying their petition for injunctive relief. We affirm.

In 1958, REM Construction Company (REM) purchased land bordering the western side of Brandywine Street in the Borough of West Chester (the Borough), Chester County and extending east to the border of property owned by John and Ruth Chatley (the Chatleys). After acquiring this land, REM sought, and was granted, approval by the Borough, to subdivide the land for a subdivision called "Mayfield Gardens Section Two" (Gardens 2). The Gardens 2 plan provided for a future street (the street extension) fifty feet in width extending eastward from Brandywine Street and ending at the Chatleys' property.[1] Subsequently, REM sold lots eighteen and nineteen that were located north and south of the street extension. In 1960, REM granted by deed the Chatleys a right of way for ingress and egress from the Chatleys' property to Brandywine Street. In June of 1977, the Chatleys conveyed by deed a 13,179 square foot parcel of land to the Lillos. The Lillos' property bordered lot eighteen on the west and the Chatleys' remaining property on the east. During the summer of the following year, the Lillos and the Chatleys agreed to excavate and construct a right of way from Brandywine Street to their respective properties for purposes of ingress and egress. In October of 1987, the Chatleys conveyed by deed the remaining portion of their property to W. Gerald and Kay Eby Moore (the Moores). The Moores subsequently sought to develop and did develop a portion of their property into a townhome community, con-

---

1. By resolution No. 1–68, dated January 2, 1968, the Borough of West Chester accepted REM's offer of dedication of the street extension as a public street of the borough.

sisting of five townhomes (Mayfield). Meanwhile, during April of 1990, James Boswell, the owner of lot eighteen, conveyed by quitclaim deed his right, title, and interest in the southeastern portion of the street extension to Carol Luanne Baker, the Lillos' daughter, who subsequently conveyed this land to the Lillos.[2]

The Moores sought to further develop their property and as part of that further development, sought to install curbs, as well as grade and pave a twenty-two foot wide portion of the street extension. In response, the Lillos filed the instant action seeking injunctive relief, asserting that they possessed fee title to the southern portion of the street extension. The trial court sitting in equity issued a preliminary injunction against further improvements on the street extension. After conducting an extensive hearing, however, the trial court issued a *decree nisi* concluding that because the street extension was accepted as a public street, the Lillos could not possess title and thus the Moores were entitled to improve the entire street extension. In so concluding, the trial court first explained that the street extension was offered for dedication in the Gardens 2 subdivision plan in 1957. The trial court then noted that the Borough formally accepted the dedication of the street extension as a public street by Resolution 1–68 on January 2, 1968. The trial court further stated that the street extension was opened to public use during the summer of 1978 when the Lillos and the Chatleys obtained curb permits from the Borough and paved the area where the street extension intersects with Brandywine Street. The trial court concluded, therefore, that because the street extension was opened to public use within twenty-one years of being laid out, the street extension was a public street. Exceptions were filed and denied. This appeal

followed. The Lillos present the following issues for our consideration:

1. Whether a way can be deemed open for public use under the Borough Code merely because the public could have used it?
2. Whether the public status of the driveway was at issue?
3. Whether the Borough was an indispensable party if the public status of the driveway was at issue.

Preliminarily, we note that appellate review of an equity matter is limited to a determination of whether the chancellor committed an error of law or an abuse of discretion. *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839 (1997); *Marchetti v. Karpowich,* 446 Pa.Super. 509, 667 A.2d 724 (1995). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Soderberg, supra; Hostetter v. Hoover,* 378 Pa.Super. 1, 547 A.2d 1247 (1988). However, "conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable." *Sprankle v. Burns,* 450 Pa.Super. 319, 322, 675 A.2d 1287, 1288 (1996) (*quoting Krosnar v. Schmidt Krosnar McNaughton Garrett Co.,* 282 Pa.Super. 526, 534, 423 A.2d 370, 375 (1980)).

The Lillos contend that the trial court erred in concluding that the street extension was a public street and, thus, subject to an easement for public use.[3] Specifically, the Lillos assert that not only was there never actual acceptance of the street extension as a public street, but that even if there had been acceptance, the street was never opened for public use.

It is the act of acceptance of a dedicated parcel of land which makes the

---

**2.** Neither the conveyance (consideration for each conveyance was $1.00) from Boswell to Baker nor from Baker to the Lillos was recorded with the Chester County Office's Recorder of Deeds.

**3.** The Lillos preliminarily assert that whether the street extension was a public street was not at issue at trial. This contention, however, is wholly lacking in merit. The Moores averred that the

street was public in their new matter, they also introduced evidence at trial in support of their position. Thus it is patently clear that whether the street extension was public was an issue at trial. For future reference, we implore the Lillos to save a few trees and refrain from making such specious arguments.

dedication complete. *In re Keifer*, 430 Pa. 491, 243 A.2d 336 (1968); *Tri City Broadcasting v. Howell*, 429 Pa. 424, 240 A.2d 556 (1968); *Boyer v. Baker*, 196 Pa.Super. 405, 175 A.2d 143 (1961). Acceptance of an offer of dedication may be express or implied. *See Wensel v. North Versailles Twp.*, 136 Pa.Super. 485, 7 A.2d 590 (1939). Thus, when a governmental entity definitively acts regarding an offer of dedication, such as adoption of an ordinance or passing a resolution, the action is generally sufficient to manifest the intent to accept the dedication. *Tri City*, 429 Pa. at 426, 240 A.2d at 558; *Borough of Milford v. Burnett*, 288 Pa. 434, 136 A. 669 (1927). *See Burger v. Rockhill Builders, Inc.*, 278 Pa.Super. 430, 420 A.2d 616 (1980) ("any unequivocal authoritative acts by the public authority establishes acceptance of the offer of dedication") (citation and quotation omitted).

■ Mere formal acceptance of the dedication of a street (or other area for that matter) that exists only on paper does not, however, render the accepted area (street, sidewalk, etc.) "public." *In re Petition of Wynn*, 188 Pa.Super. 499, 149 A.2d 149 (1959); *Borough of Lehighton v. Katz*, 75 Pa. Commw. 388, 462 A.2d 889 (1983). Rather, under such circumstances, offer and acceptance of the dedication is akin to a municipality plotting or laying out the street. *See* 53 P.S. § 46701; *Petition of Wynn*, 188 Pa.Super. at 503–05, 149 A.2d at 152. *See also* 23 Summ. Pa. Jur. *Municipal and Local Law* § 17:70. In order for a dedicated "paper street" to become a public thoroughfare, therefore, it is necessary to demonstrate that the street is actually opened by the municipality or used by the general public. *See* 53 P.S. § 46723 ("The laying out of a street, without opening same, shall create no right to public use of such street"). The "opening" of a street occurs when the street is actually graded and constructed. 53 P.S. § 46701. *Cf. Tobin v. Radnor Township Bd. of Comm'rs.*, 142 Pa. Commw. 567, 580–82, 597 A.2d 1258, 1265 (1991) (construction of a sewer line in a strip of land thirty feet to the north of a dedicated street does not constitute "opening" of the street); *Borough of Lehighton*, 75 Pa. Commw. at 395, 462 A.2d at 893 (borough activity of clearing trees and shrubbery and occasional mowing of grass did not constitute "opening" of street). Additionally, absent any local ordinance prohibiting opening a public street which the municipality did not approve, a paper street can become a public way where there has been evidence of substantial public use. *Capozzi v. Cummins*, 191 Pa.Super. 500, 159 A.2d 536 (1960). Mere occasional use or inconsequential acts, however, will not be sufficient to convert a dedication into a public way. *See Hankin v. Harbison*, 443 Pa. 196, 279 A.2d 36 (1971); *Boyer v. Baker*, 196 Pa.Super. 405, 175 A.2d 143 (1961).

■ Moreover, in order to relieve land from the burden of public servitude created by a dedication in which the dedicated streets have been laid out but not opened, the Pennsylvania Legislature enacted section 46724 of the Borough Code, which states in relevant part:

> . . . Whenever any street shall have been laid out and shall not have been opened to, or used by the public for a period of twenty-one years, such street shall not thereafter be opened without the consent of at least fifty-one percent of the number of owners of the abutting real estate and without the consent of the owners of at least fifty-one percent of the property abutting such street, based on a front foot basis.

53 P.S. § 46724. Thus, if the street is not opened by the municipality or used by the public within twenty-one years after it has been laid out, then the street may not become a public street absent consent of fifty-one percent of the abutting landowners and fifty-one percent of the owners of property abutting the street. *Id.*

The Lillos first contend that the Borough's Resolution 1–68 did not accept REM's offer of dedication of the street extension. Resolution 1–68 provides in pertinent part:

> . . . [T]he four above mentioned areas shown on the above mentioned subdivision plan (Mayfield Gardens section 2) as "Area reserved for future street extension," . . . the one running east [from Brandywine Street] . . ." [is] hereby accepted and or-

dained as public streets of the Borough of West Chester ...

The clear and unambiguous language of Resolution 1–68 states that the Borough accepted the offer of dedication of REM. *See Gianni v. R. Russell & Co.*, 281 Pa. 320, 126 A. 791 (1924). *See also Tobin, supra* (discussing interpretation of local ordinances). Accordingly, we conclude that the trial court did not err in finding that the Borough accepted REM's offer. *Soderberg, supra; Marchetti, supra; Hostetter, supra.*

■ As we have found that the Borough accepted REM's offer of dedication, our next task is to determine whether this acceptance was actual acceptance or mere formal acceptance. We conclude that resolution 1–68 merely constituted a formal acceptance of the street extension as a public street. Prior to acceptance, no work had been done on the street extension and, upon acceptance, the Borough made no immediate further effort to actually prepare the street for public use. *See Petition of Wynn, supra; Borough of Lehighton, supra.*

Accordingly, we next must ascertain whether the street extension was ever opened or used by the public after the formal acceptance. During the summer of 1978, the Lillos and the Chatleys obtained curb permits from the Borough, paved the intersection of the street extension with Brandywine Street, and laid gravel upon the remainder of the street extension. The Moores argue that these actions, coupled with the fact that upon completion of the work in 1978 the street extension connected Brandywine Street with Virginia Avenue, constituted an opening of the street extension by the Borough. In addition, the Moores assert that after 1978 the street extension was utilized by the Moores and the Lillos, as well as the owners of townhomes located on the Moores' property. Thus, the Moores conclude that the street extension is used by the public. The Lillos, on the other hand, maintain that the mere fact that the Borough approved curb permits did not amount to an opening of the

street extension. The Lillos further point out that no evidence was presented demonstrating that the street extension was ever actually used by the general public prior to 1978.

■ We disagree with the Lillos' contention that any post–1978 evidence proffered by the Moores to demonstrate public use is misplaced. Although the Lillos correctly note that the relevant time for demonstrating public use is twenty-one years following the time when the street extension was dedicated, *see* 53 P.S. § 46724, the Lillos incorrectly rely on the trial court's erroneous finding that the 1957 Gardens 2 subdivision plan was the offer of dedication. It is clear from the evidence presented that the offer of dedication actually occurred during the 1968 Borough Council meeting where REM formally offered the street extension for dedication. *See Borough of Lehighton*, 75 Pa. Commw. at 394–96, 462 A.2d at 893 (date of offer of dedication commencing running of twenty-one year period was formal Borough Council meeting rather than when plan of subdivision was first drawn where record was clear that Borough took no action to accept after road was laid out in subdivision plan).

■ Considering that (1) the street extension was formally accepted as a public street by the Borough *via* resolution in 1968; (2) the Lillos and Chatleys applied for and received curb permits from the Borough and paved the area where the street extension intersected with Brandywine Street; (3) the Lillos, the Chatleys, the Moores, and the residents of the townhome community all continuously utilized the street extension for purposes of ingress and egress; and (4) the street extension connected Brandywine Street with Virginia Avenue, we cannot say that the trial court erred in concluding that the street extension is a public street. *Soderberg, supra.* Taken together, the above facts not only demonstrate substantial public use, but a clear intention by the Borough to sanction the opening of the road.[4] *See Ca-*

---

4. The Lillos also assert that the Borough is an indispensable party to this action because the trial court's findings imposed a new public street upon the Borough. While the Lillos are correct in their assertion that this issue can be raised for the first time at any stage, since it invokes the jurisdiction of the court, we conclude that the Borough is not an indispensable party to the

*pozzi, supra. Cf. Pawlowski v. Borough of Barnesboro,* 118 Pa. Commw. 375, 545 A.2d 965 (1988) (occasional public use of a footpath through woods and a grassy area does not constitute public use consistent with a street); *Tobin,* 142 Pa. Commw. at 580–82, 597 A.2d at 1265 (construction of a sewer line could not be considered an act opening a street).

 Even if the evidence of record is insufficient to establish a public way within twenty-one years of the offer of dedication, we would still affirm the order of the trial court denying injunctive relief. The entire basis for the Lillos' filing for injunctive relief was that they owned one-half of the street extension in fee and thus desired to preclude the Moores from undertaking any action thereon. Assuming the validity of their contention of ownership, however, their land would still be subject to an easement for right of way purposes over the entire proposed street. In a previous action between these two parties, neither party contested the existence of an easement over the entire street extension and such a finding was explicitly made by the Court of Common Pleas of Chester County.[5] *See Moore v. Lillo,* No. 89–10043 Court of Common Pleas of Chester County (filed May 27, 1992). The final decree in this action was never appealed. Additionally, since the land in question was laid out as a street in the Gardens 2 subdivision plan and the Moores are abutting landowners to the street extension, they are clearly entitled to an easement over the street extension.[6] *See Ferko v. Spisak,* 373 Pa.Super. 303, 541 A.2d 327 (1988) ("where the public's

right to use a roadway has been extinguished, the owners of the property abutting the street possessed an easement for right of way purposes over the entire proposed street"); *McLaughlin v. Cybulski,* 192 Pa.Super. 7, 159 A.2d 14 (1960) (same). *See also Riek v. Binnie,* 352 Pa.Super. 246, 507 A.2d 865 (1986) (purely private rights of easement of property owners are not extinguished where public street is not opened within twenty-one years of dedication).

Order affirmed.

OLSZEWSKI, J., concurs.

OLSZEWSKI, Judge, concurring:

While I am in full agreement with the result reached by the majority, I write to add the following clarification. A private landowner can acquire a private right-of-way in public land where the land is conveyed pursuant to plan of lots on which streets are planned if such conveyance occurs prior to the opening or plotting of such streets as public. *See Cohen v. Simpson Real Estate Corp.,* 385 Pa. 352, 123 A.2d 715 (1956). Thus, whether a street is public is not dispositive of all private ownership issues. Appellants' predecessors in title, however, did not acquire the land pursuant to such a plan. Even if appellants could claim a private right-of-way, nothing in the majority opinion impairs the exercise of such rights.

present action because the Borough had previously accepted the street extension as a public road. Thus, the Borough would not gain any additional burdens or obligations as a result of the equity court's findings. *Cf. Waksmunski v. Delginis,* 391 Pa.Super. 37, 570 A.2d 88 (1990) (township was found to be an indispensable party where a party attempted to declare a previously undedicated and unaccepted road public). In any event, even if the Borough were an indispensable party, a remand would be unnecessary because under our alternative holding, the Borough's rights would not be implicated.

5. The Chatleys, upon selling the Lillos their property, expressly reserved in the deed a right of way over the entire street extension for themselves and their assigns. This appurtenant ease-

ment runs with the land. Thus, when the Chatleys sold the remainder of their property to the Moores, that property retained the reserved easement over the street extension.

6. Because the Moores and their successors in interest possess an easement over the entire portion of the street, it logically follows that they could make improvements that do not unreasonably burden the servient estate. We need not address the reasonableness of the improvements in the present case, because the Lillos have not questioned them. *See Estojak v. Mazsa,* 522 Pa. 353, 562 A.2d 271 (1989) (where appellants did not claim improvements to easement were unreasonable burdens, court need not address the issue).