J-A14041-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| RONALD L. WHISPELL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BUCKHORN VOLUNTEER COMMUNITY | : | |
| FIRE CO. NO. 1, A/K/A BUCKHORN | : | |
| COMMUNITY VOLUNTEER FIRE CO. | : | |
| NO. 1, | : | |
| | : | |
| Appellee | : | No. 1629 MDA 2013 |

Appeal from the Judgment entered September 5, 2013
in the Court of Common Pleas of Columbia County
Civil Division at No(s): 2008-CV-5

BEFORE:  FORD ELLIOTT, P.J.E, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 11, 2014**

Ronald L. Whispell (Whispell) appeals from the September 5, 2013 judgment entered against him and in favor of Buckhorn Volunteer Community Fire Co. No. 1 (Buckhorn), in this case arising from Buckhorn's sale of real property to Whispell.  We affirm.

The trial court summarized the history of this case as follows.

The Defendant is the Buckhorn [], which had merged with, and assumed all the property and obligations of the Fernville Volunteer Fire Company in 2003.  Fernville is a village located in Hemlock Township, Columbia County.  The property so acquired included a small plot of land in Hemlock Township upon which had been erected a small fire station.  Not being in need of another fire station, Buckhorn decided to list the property for sale.

[Whispell] is the owner of a bar/restaurant in Columbia County, and was seeking to expand his operations to include a

* Retired Senior Judge assigned to the Superior Court.

catering business and banquet hall. On June 10, 2004, the parties entered into a written sales agreement for the sale and purchase of the subject realty for a consideration of $70,000. The agreement contained two relevant contingencies: that Whispell be able to lease an adjoining parcel of land from Hemlock Township to use for parking, and that he obtain a zoning variance for his intended use of the building. Both contingencies were met, and settlement occurred on August 20, 2004.

The sales agreement also provided that Whispell had a right to obtain a survey of the subject property prior to settlement. Unwisely, he opted not to do so.

Following settlement, Whispell took possession of the property and began to make the necessary alterations to convert the building into a commercial kitchen and banquet hall. In 2007 he discovered that a portion of the structure he was working on was not on the lot he had purchased. Ultimately, the instant litigation ensued.

At this point, it is necessary to review the history of the parcel in question. Francis and Mary Drinker owned a farm in Hemlock Township in the late Nineteenth Century. They decided to subdivide a large portion of the farm into small lots for a residential development. To that end, they hired a surveyor who drew a map with numerous plots for houses and streets (some with names, and some without). Although the map was drawn in 1893, it was not recorded in the office of the Recorder of Deeds of Columbia County until 1925. The map was labeled "Plot of Fernville".

The first lot conveyed in the subdivision was lot number 1, which was sold to the Hemlock Township School District. Thereafter, a small school house was erected on the lot. The deed description calls for a parcel 50 feet wide and 150 feet deep on the southerly side of "Drinker Street", one of the streets designated in the Plot of Fernville. The deed further provides that the westerly boundary of the lot is a line beginning "on or alongside **the gully or lane** that runs between Fernville and the land of Troup (formerly Yocum)." (emphasis added)

An examination of the recorded map, however, shows what appears to be a street beginning on Hemlock Alley,

- 2 -

intersecting and crossing Drinker Street and continuing along the entire 150 feet of the westerly edge of the subject parcel. What appears to be a street, however, is designated on the map as a "gully between Yocum & Drinker".

Nearly a century later, and one room schoolhouses being no longer in vogue, Hemlock Township sold the parcel in 1982 to the Fernville Volunteer Fire Company. The same deed description was used as in the 1893 deed. The fire company then demolished the school house and erected a cinderblock and brick structure for use as a fire station. Unfortunately, a portion of the new building (about 10 feet wide and 100 feet long) occupies the "gully or lane" and not lot number 1. When the land was conveyed to Whispell in 2004, the old deed description was again used in the Special Warranty Deed. The 2004 deed further provided that the conveyance was "together with all ... the reversions... and all the estate, right title, interest, property claim and demand whatsoever of the Grantors...."

Trial Court Opinion, 6/17/2013, at 1-3.

On January 2, 2008, Whispell filed a complaint against Buckhorn seeking rescission of the contract by reason of mutual mistake, and rescission by reason of Buckhorn's failure to disclose material facts. After obtaining leave of court, Whispell filed an amended complaint on September 24, 2009, adding claims for money damages based upon negligent misrepresentation and fraud.[1] On June 15, 2011, Whispell filed a petition for leave to amend his amended complaint to allege "physical and mental

_____

[1] Whispelll at no time attempted to cure the title defect by filing an action to quiet title. The trial court noted that, in an effort to resolve this case, Buckhorn itself filed such an action, including Whispell as a plaintiff. Trial Court Opinion, 6/6/2013, at 5 n.1. Whispell objected and had himself removed as a plaintiff. There is conflicting information in the record on the status of the quiet title action. *Compare id.* (indicating that the quiet title action "is no longer being pursued") *with* N.T., 6/7/2013, at 26 ("That action is still ongoing.").

- 3 -

damage to [Whispell] as well as economic damage suffered by [Whispell] in his other area businesses" as a result of Buckhorn's fraud and/or negligent misrepresentation. Petition to Amend Complaint, 6/15/2011, at ¶ 7. By order of August 11, 2011, the Honorable Thomas A. James, Jr., denied the petition based upon the determination that "the damage which [Whispell] intends to include in the proposed amended [c]omplaint are not recoverable damages under the cause of action at issue in this matter." Order, 8/11/2011.

On April 9, 2012, Judge James entered an order assigning the case to the Honorable Brendan J. Vanston, who entered an order scheduling discovery, dispositive motions, and trial. On May 13, 2013, Whispell filed pre-trial motions asking, *inter alia*, for Judge Vanston to reconsider Judge James' ruling denying Whispell leave to amend the amended complaint. Judge Vanston denied Whispell's pre-trial motions by order of May 20, 2013. Judge Vanston conducted a non-jury trial on June 6 and 7, 2013.

At the close of Whispell's case-in-chief, Buckhorn moved for a directed verdict. The trial court granted the motion as to the fraud and negligent misrepresentation counts. N.T., 6/6/2013, at 172. On June 11, 2013, Judge Vanston returned a verdict in favor of Buckhorn and against Whispell on the rescission claims. Whispell filed post-trial motions, which Judge Vanston

denied by order of August 28, 2013. On September 5, 2013, judgment was entered on the verdict. Whispell timely filed a notice of appeal.[2]

Whispell presents the following questions for this Court's review.

I. Whether the [t]rial [j]udge erred in entering verdict and judgment for [Buckhorn] and against [Whispell] by concluding that since Hemlock Township did not open the gully[3]/lane to public travel within the relevant time period, title reverted to the adjoining owners in fee to [Buckhorn], and by extension, Whispell and Hicks.

II. Whether the [t]rial [j]udge erred in granting [Buckhorn's] directed verdict as to [Whispell's] complaint pertaining to theories of negligent misrepresentation and fraud (Counts three and four) as [Whispell] had proven the elements of negligent misrepresentation and/or fraud and [Buckhorn] knew or should have known that the firehouse was constructed on property which was not owned by Buckhorn or by Fernville Fire Company.

III. Whether the [t]rial [j]udge erred in failing to grant [Whispell's] pretrial omnibus motions in limine pertaining to a reconsideration of Judge James' denial of [Whispell's] [p]etition to [a]mend his [c]omplaint.

Whispell's Brief at 4.

Whispell first argues that he is entitled to judgment notwithstanding the verdict (JNOV) or a new trial on his rescission claims.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the

_____

[2] The trial court did not order Whispell to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed.

[3] The trial court and Whispell use alternate spellings: gully and gulley. For the sake of consistency, we spell the term "gully" regardless of the spelling used in the quoted source.

movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260 (Pa. Super. 2014)

(quoting *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1147–48

(Pa. Super. 2013)).

Rescission is an equitable remedy, to be granted only where the parties to a contract can be placed in their former positions with regard to the subject matter of the contract. It is well known that the purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction.

*Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 766 (Pa. Super. 1999)

(citations and emphasis omitted). "Our courts have established that the

only grounds upon which equity will permit rescission of an executed

- 6 -

contract are fraud, mistake, failure of consideration, and *quia timet*[4]."
*Umbelina v. Adams*, 34 A.3d 151, 158 (Pa. Super. 2011) (citations and quotation marks omitted). "[E]xecuted contracts cannot be rescinded or annulled in the absence of a showing fraud or mistake simply because a party found the contract to be burdensome or a financial failure." *Id.* at 160.

The trial court held that Whispell was not entitled to the equitable remedy of rescission because he suffered no harm as a result of encroachment of the building onto adjoining land. This determination was based upon application of the following statute.

> Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.

36 P.S. § 1961. The purpose of the statute is "to relieve land upon which streets have been laid out by the owners, but not used, from the servitude imposed." *Rahn v. Hess*, 106 A.2d 461, 463 (Pa. 1954). "Where a municipality does not open the street within the twenty-one year period set forth in Section 1961, the abutting lot owners acquire the fee in the street to

---

[4] *Quia timet* is defined as follows: "[Latin 'because he fears'] A legal doctrine that allows a person to seek equitable relief from future probable harm to a specific right or interest." BLACKS LAW DICTIONARY 1281 (8th ed. 2004).

the center line." *Leininger v. Trapizona*, 645 A.2d 437, 440 (Pa. Cmwlth. 1994) (citing *Rahn, supra*).

Whispell argues that the trial court erred in holding that the "gully or lane" was a lane subject to the operation of 36 P.S. § 1961. Whispell cites to testimony that

> the gully was a drainage ditch. The maps and testimony indicate that the area behind Whispell's property is a creek. The gully drains into the creek. If this was a lane or road, it would be a road to nowhere…. Therefore, since the gully is clearly not a lane, and [Buckhorn] failed to establish that the adjoining property owner's deed called for the gully or lane as a boundary, or that the gully/lane had lost its private and/or public character, judgment should be entered for [Whispell], or a new trial should be granted.

Whispell's Brief at 22-23 (citations to the reproduced record omitted).

By focusing on the present condition of the land rather than the subdivision plot, Whispell's argument misses the distinction between "laying out" and "opening" a street. As this Court explained in the context of a similar statute applicable to boroughs,

> [m]ere formal acceptance of the dedication of a street (or other area for that matter) that exists only on paper does not, however, render the accepted area (street, sidewalk, etc.) "public." Rather, under such circumstances, offer and acceptance of the dedication is akin to a municipality plotting or laying out the street. In order for a dedicated "paper street" to become a public thoroughfare, therefore, it is necessary to demonstrate that the street is actually opened by the municipality or used by the general public. The "opening" of a street occurs when the street is actually graded and constructed.

*Lillo v. Moore*, 704 A.2d 149, 153 (Pa. Super. 1997) (citations omitted).

- 8 -

The plot of Fernville, which was drafted in 1893 and recorded in 1925, showed a lane or gully running along the western boundary of the parcel in question, which was lot number 1 carved out of the 154-acre plot that was the original Drinker estate. This lane or gully is not given a name on the plot. However, the trial court determined that the area was dedicated as a lane, explaining as follows.

> Looking at the map, it appears to be so. The fact that it is unnamed is not determinative, as there are other streets and thoroughfares on the map which bear no names. Two factors, however, are persuasive: first, the deed which was made contemporaneous with the map refers to it as a "gully or lane"; second, that same "lane" going north from the subject property and across Drinker Street, is an opened, paved, public street. On the map, the portion of the "gully or lane" which is north of Drinker Street appears to be identical to the portion which is south of Drinker Street.

Trial Court Opinion, 6/17/2013, at 5. Thus, the evidence indicates that the "gully or lane" was indeed plotted out as a public street on paper. However, the testimony from all witnesses at trial was consistent in establishing that the "gully or lane" was never opened. It was not graded or paved. In fact, Whispell's description of the area, which is consistent with the testimony of other witnesses, establishes that it is a grassy area with a drainage pipe running under it. N.T., 6/6/2013, at 35.

Accordingly, the trial court concluded that "one-half of that street would be the property of [] Whispell, and the other half owned by a Susan Hicks. The surveyors for both parties agree that the 'lane' is approximately

32 feet wide. Therefore, attributing one-half of that width to Whispell cures his encroachment problem." *Id.* at 4.

Our review of the record reveals that it supports the trial court's findings. Nonetheless, Whispell argues the determination that he has legal title to approximately 16 feet of the "gully or lane" does not resolve the issue. Whispell claims that even if the public right of use of the lane was lost by the failure to open it within 21 years, the individual property owners in the plan have retained private rights to use the lane. Whispell's Brief at 20. Whispell argues that,

> because of the [trial] court's holding, the homeowners in the Drinker Subdivision have a cause of action against [him] because the firehouse is encroaching on the gully. These homeowners may file an action to have [Whispell] enjoined from interfering with their use of the gully as easement holders. Under these circumstances, it is clear that … [Whispell] can never use the property as intended or convey the same because the entire Drinker Subdivision has an easement over the gully. Whispell can also be enjoined from ever utilizing the property.

*Id.* at 21. Further, Whispell contends, the "building as it stands would also be in violation of the Hemlock Township zoning side-setback requirements." *Id.*

Whispell is correct that the case law provides that "while the public easement or right of use in such lanes or alleys is lost as the result of the passage of such time and lack of use, the purely **private** rights of easement of individual property owners in the plan of lots to use the alley or way [are] not extinguished." *Riek v. Binnie*, 507 A.2d 865, 867 (Pa. Super. 1986)

- 10 -

(emphasis in original). However, Whispell points to nothing that would substantiate his stated concerns.

The case cited by Whispell involves not a paper alley which by his description is "a road to nowhere," Whispell's Brief at 22, but a roadway which other landowners had used for ingress and egress despite the fact that it was never formally accepted as a street. *Riek*, 507 A.2d at 866 ("The Appellees own properties on either side of the private drive, known as Francis Alley, and sought to prevent the Appellants from using that road for ingress and egress."). From the testimony offered at trial, it does not appear that any homeowner in the Drinker Subdivision has ever used the "gully or lane" for travel. Rather, it was a drainage gully, subject to flooding, that at some point was filled in over a drainage pipe. N.T., 6/6/2013, at 35, 203. Not only is it not used by the general public as a street, evidence offered by Whispell at trial establishes that the township will not allow vehicles to be driven over the area "because the pipe would eventually be destroyed." N.T., 6/6/2013, at 108. Whispell further fails to point to any evidence in the record to substantiate his claim that he is in violation of zoning regulations as a result of the trial court's ruling.

The trial court's factual findings are supported by the record. We discern no error of law. Whispell's academic arguments about being sued by people who never have used the "gully or lane" and have no reason to use

- 11 -

it, do not convince us that the trial court abused its discretion in holding that

Whispell was not entitled to the equitable remedy of rescission.

Whispell's second issue challenges the trial court's grant of a directed

verdict as to his claim of negligent misrepresentation.[5]

> In reviewing the trial court's entry of a motion for a directed
> verdict, our scope of review is limited to determining whether
> the trial court abused its discretion or committed an error of law
> that controlled the outcome of the case. A directed verdict may
> be granted only where the facts are clear and there is no room
> for doubt. In deciding whether to grant a motion for a directed
> verdict, the trial court must consider the facts in the light most
> favorable to the nonmoving party and must accept as true all
> evidence which supports that party's contention and reject all
> adverse testimony.

***Berg v. Nationwide Mut. Ins. Co., Inc.***, 44 A.3d 1164, 1170 (Pa. Super.

2012) (citations and quotation marks omitted).

The elements of a claim for negligent misrepresentation are as follows.

> Negligent misrepresentation requires proof of: (1) a
> misrepresentation of a material fact; (2) made under
> circumstances in which the misrepresenter ought to have known
> its falsity; (3) with an intent to induce another to act on it; and
> (4) which results in injury to a party acting in justifiable reliance
> on the misrepresentation. The elements of negligent
> misrepresentation differ from intentional misrepresentation in

---

[5] In his statement of questions presented, Whispell also claims the trial court erred in directing the verdict on his fraudulent misrepresentation claim. However, in responding to Buckhorn's motion at trial, Whispell conceded that he did not produce evidence to sustain that claim. ***See*** N.T., 6/6/2013, at 172 "[W]e haven't had anyone that's testified that said [']I knew that they didn't own -- that there was an encroachment and still sold it to Mr. Whispell,['] we don't have that here."). Further, in his brief, Whispell argues not that Buckhorn had knowledge that it did not own all of the property on which the building sat, but that it "ought to have known." Whispell's Brief at 27. Accordingly, we address only his argument as to negligent misrepresentation.

- 12 -

that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. **Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.**

*Milliken v. Jacono*, 60 A.3d 133, 141 (Pa. Super. 2012) (quoting *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa.Super.2002)) (emphasis added in *Milliken*).

Whispell's misrepresentation claim is premised upon the following evidence. Whispell first points to a 1982 letter from the zoning board solicitor to the chairman of the zoning board in which he addressed the subjects of reconstruction of the fire hall and the possibility of vacating an unopened alley. N.T., 6/6/2013, at 82. Next, Whispell points to a Labor and Industry (L&I) document from 1983 that references the subject lot as being 70 feet wide, rather than 50 feet wide as indicated in the deed.

Finally, Whispell relies upon a series of minutes of meetings of Hemlock Township supervisors in 2003 which indicate that the township manager, Stephanie Haney, was tasked with researching the deeds to the fire hall lot and the lot behind or beside it as it related to access to parking. N.T., 6/6/2013, at 97-98. One document Haney reviewed in investigating the availability of parking was a geographic information system (GIS) map which showed a line running through the fire hall. *Id.* at 92. Haney testified that she did not pay much attention to the line:

I don't use lines that are on GIS to be foot-to-foot accurate, so it didn't -- I mean, for instance, you can even see there are lines through the houses further out, so it didn't strike me as odd. I mean, they -- I know that these lines aren't always spot on and it didn't even raise a flag for me.

\* \* \*

I don't think I even noticed it.

*Id.*

Whispell points to no evidence that Buckhorn had actual knowledge of the contents of these documents.[6] His claim rests upon evidence that indicates that these documents were available to Buckhorn. *See, e.g.,* N.T., 6/6/2013, at 155 (Buckhorn president Scott Trough testifying that, after receiving discovery requests in the instant case, he found the 1983 L&I document in "a pile of paperwork" from Fernville Fire Company). Therefore, claims Whispell, Buckhorn "ought to have known" the falsity of its indication, on the commercial property information sheet that it provided to Whispell prior to the sale, that there were no encroachments or boundary line disputes. Whispell's Brief at 27. Thus, Whispell argues, Buckhorn is guilty of misrepresenting a material fact.

---

[6] As indicated in note 3, *supra*, Whispell conceded at trial that he had produced no evidence that Buckhorn sold the property to Whispell knowing that it did not own the property on which the building was built. Each Buckhorn witness Whispell called testified that the first time Buckhorn became aware of any boundary problem was after it sold the property to Whispell. *See* N.T., 6/6/2013, at 122 (Buckhorn fire chief Kenneth Wenner was unaware of any boundary problem until after the sale); *id.* at 138-39 (first assistant fire chief Michael Vandine had no knowledge of boundary dispute until Whispell brought it up); *id.* at 148 (Buckhorn president Scott Trough was unaware of any boundary issue until Whispell so indicated).

The documents relied upon by Whispell arguably show that Hemlock Township and the Fernville Fire Company had reason to know of a defect in the title to the property. However, Hemlock Township was not involved in the sale of Buckhorn's land to Whispell. N.T., 6/6/2013, at 112-13. No one from the Fernville Fire Company advised Buckhorn of any encroachment of the building onto adjoining land. *Id.* at 144. Whispell does not argue, let alone cite any authority to establish, that the knowledge of the township or Fernville Fire Company is for some reason imputed to Buckhorn.

Buckhorn did not review or catalogue the old documents it received from Fernville Fire Company at the time of the 2002 merger until the instant litigation began. *Id.* at 145, 155. Whispell makes no effort to cite authority supporting his apparent claim that, to exercise reasonable care, Buckhorn had a duty to investigate for title defects.[7]

Because Whispell failed to offer evidence that Buckhorn knew or, upon performance of a duty of reasonable care owed to him, should have known that it misrepresented a material fact, the trial court did not err in granting

---

[7] The only indication of any standard of care in property transfers is Whispell's explanation why he did not exercise his right to have the property surveyed prior to the sale: "It's not standard procedure in the Bloomsburg, Columbia County area. We just expect that everything is right." N.T., 6/6/2013, at 30. Similarly, Whispell cancelled his title insurance after the sale because he considered it "an added expense that I didn't need." *Id.* at 47. Whispell offers no explanation why Buckhorn should have been more diligent when it acquired the property from Fernville Fire Company than he was when he bought it from Buckhorn.

Buckhorn's motion for a directed verdict on his negligent misrepresentation claim.

With his final question, it is unclear whether Whispell is challenging (1) Judge Vanston's refusal to reconsider Judge James' denial of leave to amend the amended complaint, or (2) the denial of leave to amend the amended complaint to expound upon the damages Whispell suffered as a result of Buckhorn's fraud and/or negligent misrepresentation.  In either event, given our determination that the trial court did not err in granting Buckhorn's motion for a directed verdict on the fraud and negligent misrepresentation claims, the issue is moot.  ***See, e.g., Zitney v. Appalachian Timber Products, Inc.***, 72 A.3d 281, 290 (Pa. Super. 2013) (holding challenge to limitation on damages is moot where fact-finder determined that defendant had no liability).

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2014